**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JAN 2 3 2014

Madsen, C.J.
CHIEF JUSTICE



This opinion was filed for record
at _8:00 a.m._ on _1/23/14_

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re Personal Restraint Petition of | ) No. 86001-7 |
| | ) |
| DANIEL J. STOCKWELL, | ) En Banc |
| | ) |
| Petitioner. | ) Filed **JAN 2 3 2014** |
| | ) |
| | ) |

MADSEN, C.J.—Petitioner Daniel Stockwell seeks to withdraw his guilty plea to a 1986 charge of statutory rape in the first degree. Stockwell's plea statement and judgment and sentence misstated the statutory maximum sentence. We hold that in a personal restraint petition (PRP), a petitioner must show actual and substantial prejudice in a challenge to a guilty plea based on such a misstatement. Because Stockwell fails to make this showing, we affirm the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

In 1985, Daniel Stockwell was convicted of indecent liberties and given a special sex offender sentencing alternative (SSOSA). During his required outpatient treatment, he admitted to having sexual contact with a minor. Subsequently, he was charged with one count of statutory rape in the first degree, which he pleaded guilty to on July 29, 1986. His plea form stated the prosecutor would recommend an exceptional sentence

within SSOSA guidelines. However, the plea statement and judgment and sentence both misstated the maximum sentence as 20 years, with a $50,000 fine, when in fact the statutory maximum was life.

Stockwell received a SSOSA exceptional sentence downward, including 24 months of outpatient treatment and 12 months of community supervision. He completed the terms of his sentence and was discharged on October 25, 1989.

Meanwhile, the legislature enacted a one year time limit on collateral attacks of criminal convictions, which became effective on July 23, 1989. RCW 10.73.120. This time limit applies to all petitions filed more than one year after the effective date of the statute. RCW 10.73.130. The Department of Corrections (DOC) was directed to attempt to advise every person who, on the effective date, was "serving a term of incarceration, probation, parole, or community supervision pursuant to a conviction of a felony," of the change. RCW 10.73.120. The director of the division of community corrections issued a memorandum dated December 5, 1989, directing community corrections and work release supervisors to post a DOC notice addressing the time limit change. Stockwell's community custody ended about six weeks before the memorandum was issued, and he claims he was not notified of the time limit.

In 2004, Stockwell was convicted of first degree child molestation and attempted first degree child molestation. The trial court imposed a persistent offender sentence of life without the possibility of early release, relying on the earlier convictions. Stockwell subsequently filed a PRP challenging the 1986 judgment and sentence. He first

2

contended he was not time barred because his sentence was facially invalid and he did not receive notice from DOC. He also argued his guilty plea was involuntary because the plea statement incorrectly stated the maximum. The acting chief judge dismissed his petition as time barred.

Stockwell filed a motion for discretionary review in this court, which was stayed pending *In re Personal Restraint of McKiearnan*, 165 Wn.2d 777, 203 P.3d 375 (2009). After *McKiearnan*, the matter was referred to a department of the court, which granted review and remanded to the Court of Appeals for reconsideration in light of *McKiearnan*.

On remand, the Court of Appeals determined that Stockwell's petition was not time barred because DOC failed to provide notice of the time limit. *In re Pers. Restraint of Stockwell*, 161 Wn. App. 329, 334, 254 P.3d 899 (2011). Considering the merits, the court held that although Stockwell demonstrated a constitutional error based on misinformation of the statutory maximum, he failed to show resulting prejudice. Stockwell then filed a motion for discretionary review in this court. This motion was stayed pending *In re Personal Restraint of Coats*, 173 Wn.2d 123, 267 P.3d 324 (2011). Following *Coats*, the court granted review.

## ANALYSIS

Before addressing Stockwell's substantive arguments, we must determine whether Stockwell's petition is time barred. "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was

rendered by a court of competent jurisdiction." RCW 10.73.090. Facial invalidity can exist if a trial court lacked the statutory authority to impose a sentence. *In re Pers. Restraint of Scott*, 173 Wn.2d 911, 916, 271 P.3d 218 (2012); *see also Coats*, 173 Wn.2d at 144 ("[w]e have found only errors that result from a judge exceeding the judge's authority to render a judgment and sentence facially invalid.").

Stockwell's petition was filed over two decades after his judgment became final. He also received an exceptional sentence downward, a legal sentence both under the erroneous maximum and the correct legal maximum. Thus, his sentence was facially valid and time barred.

Stockwell, however, argues RCW 10.73.090 should not bar his PRP because DOC did not attempt to give him notice of the time bar amendment. When the legislature amended chapter 10.73 RCW to include the time bar, it required DOC to "attempt to advise" everyone who, on July 23, 1989, was under community supervision pursuant to a felony conviction. RCW 10.73.120. While actual notice was not required, an attempt was necessary. *See In re Pers. Restraint of Vega*, 118 Wn.2d 449, 823 P.2d 1111 (1992) (time limit did not apply where no attempt was made to notify petitioner serving federal prison sentence).

Here, notices were not posted until after Stockwell was discharged. The State argues the act of posting notices alone is sufficient to meet the statutory requirements under *In re Personal Restraint of Runyan*, 121 Wn.2d 432, 453, 853 P.2d 424 (1993). In *Runyan*, this court held the time bar applied to a petitioner on parole who regularly

reported to his parole officer, where notices were placed in community correction offices. *Id.* at 438, 451. There, the petitioner was unable to show that DOC did not attempt notice. *Id.* at 453. Unlike the petitioner in *Runyan*, Stockwell did not have a similar opportunity to potentially see the notices. Accordingly, the time bar does not apply to Stockwell's petition.[1]

Turning to the merits of the petition, Stockwell contends that misinformation regarding the legal maximum sentence renders his plea involuntary, violating the due process clause of the United States and Washington Constitutions. In light of this error, he argues he need not show actual and substantial prejudice because an involuntary plea creates a presumption of prejudice in a direct appeal and that same standard also applies in a PRP.

Where we have addressed the standards in a direct appeal, we have stated that "[d]ue process requires an affirmative showing that a defendant entered a guilty plea intelligently and voluntarily." *State v. Ross*, 129 Wn.2d 279, 284, 916 P.2d 405 (1996) (citing *State v. Barton*, 93 Wn.2d 301, 304, 609 P.2d 1353 (1980)). A guilty plea may be considered involuntary when it is based on misinformation regarding a direct consequence of the plea, which includes the statutory maximum. *State v. Mendoza*, 157 Wn.2d 582, 591, 141 P.3d 49 (2006) ("a guilty plea may be deemed involuntary when

---

[1] The State contends that the Court of Appeals exceeded the scope of our remand order by reassessing its prior decision on the issue of notice. While we remanded for reconsideration in light of *McKiearnan*, which involved facial invalidity, nothing in the order precluded review of the timeliness issue. Additionally, RAP 2.5(c)(2) allows an appellate court to "review the propriety of an earlier decision of the appellate court . . . and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review." *See Folsom v. County of Spokane*, 111 Wn.2d 256, 264, 759 P.2d 1196 (1988).

based on misinformation regarding a direct consequence on the plea"); *State v. Weyrich*, 163 Wn.2d 554, 557, 182 P.3d 965 (2008) ("A defendant must be informed of the statutory maximum for a charged crime, as this is a direct consequence of his guilty plea.). An involuntary plea constitutes a manifest injustice. *State v. Walsh*, 143 Wn.2d 1, 6, 17 P.3d 591 (2001). Under CrR 4.2(f), a court must allow a defendant to withdraw a guilty plea where withdrawal is necessary to correct a manifest injustice. However, if the motion for withdrawal is made after the judgment, it is governed by CrR 7.8(b), which states that a court "may relieve a party from a final judgment" for several reasons including mistake, newly discovered evidence, fraud, a void judgment, or any other reason justifying relief.

We have acknowledged that a petitioner may seek to withdraw a plea on direct appeal where the defendant has been misinformed of the maximum sentence. *See, e.g.*, *Mendoza*, 157 Wn.2d at 592; *Weyrich*, 163 Wn.2d at 556; *Walsh*, 143 Wn.2d at 10. For example, in *Mendoza*, a miscalculated offender score resulted in a lower range than indicated in the plea agreement. *Id.* at 584-85. During sentencing proceedings, the State explained the error and requested a lower sentence within the correct range. *Id.* Mendoza moved to withdraw his plea on grounds unrelated to the erroneous score. *Id.* at 585. The sentencing court rejected Mendoza's motion. *Id.* On review, this court stated that "[a]bsent a showing that the defendant was correctly informed of all of the direct consequences of his guilty plea, the defendant may move to withdraw the plea." *Id.* at 591. However, Mendoza waived his right to challenge the plea as involuntary because he

6

did not object to sentencing or move to withdraw his plea when he learned of the mistake in the offender score before sentencing, and he received a lower sentence than statutorily authorized by his correct score. *Id.*

Similarly, in *Weyrich*, a plea statement and judgment and sentence mistakenly described one of the charges as having a maximum sentence of five years, when in fact the maximum was 10 years. 163 Wn.2d at 556. Despite the error, Weyrich was sentenced within the correct range. *Id.* Prior to sentencing, Weyrich moved to withdraw his pleas, which he argued were not knowingly, voluntarily, and intelligently made. *Id.* The trial court denied the motion and the Court of Appeals affirmed. *State v. Weyrich*, noted at 137 Wn. App. 1011 (2007). We reversed the Court of Appeals and noted that "[t]he State's argument that the error did not actually affect Weyrich's decision to plead guilty requires the sort of subjective hindsight inquiry into Weyrich's decision of which *Mendoza* and *Isadore* disapprove."[2] *Weyrich*, 163 Wn.2d at 557.

Here, Stockwell's judgment and sentence did not reflect the correct statutory maximum of life imprisonment. On direct appeal this error would be presumed prejudicial and, unless waived, would support Stockwell's motion to withdraw his plea. The issue here is whether Stockwell is entitled to the same presumption of prejudice on collateral review or whether he bears the burden to show the error caused actual and substantial prejudice.

---

[2] Stockwell argues that *Weyrich* was a "collateral attack" as defined under RCW 10.73.090(2). This is incorrect. *Weyrich* was a direct appeal and RCW 10.73.090(2) does not apply.

A petitioner's burden on collateral review has evolved over the course of several decades. In *In re Personal Restraint of Hagler*, 97 Wn.2d 818, 650 P.2d 1103 (1982), we discussed the origin of PRPs in the State's habeas corpus remedy under article IV, section 4 of the Washington State Constitution. *Id.* at 823. We stated that a PRP, like a petition for a writ of habeas corpus, is not a substitute for an appeal. *Id.* In discussing the standard to be applied we stated, "While the presumption of prejudice is appropriate to direct review of a conviction, it is not appropriate to collateral review by way of personal restraint petition." *Id.* We acknowledged collateral review is distinct from a direct appeal because collateral relief "undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders." *Id.* at 824 (citing *Engle v. Isaac*, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)). We also stated that under federal habeus standards, the burden is on the petitioner to show "'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 825 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). We held that the same burden should be met in PRPs challenging trial error. *Id.* Then, in *In re Personal Restraint of Cook*, 114 Wn.2d 802, 810, 792 P.2d 506 (1990), we addressed the petitioner's burden when raising constitutional trial error stating that "in the context of a constitutional error, a petitioner must satisfy his threshold burden of demonstrating actual

and substantial prejudice." *Id.* (citing *In re Pers. Restraint of Haverty*, 101 Wn.2d 498, 504, 681 P.2d 835 (1984)).

The court continued its course correction in *In re Personal Restraint of St. Pierre*, 118 Wn.2d 321, 823 P.2d 492 (1992). Prior to *St. Pierre*, in several cases, the court presumed prejudice on collateral review when the error would never be harmless on direct appeal. *See State v. Kitchen*, 110 Wn.2d 403, 413, 756 P.2d 105 (1988); *In re Pers. Restraint of Boone*, 103 Wn.2d 224, 233, 691 P.2d 964 (1984); *In re Pers. Restraint of Gunter*, 102 Wn.2d 769, 774, 689 P.2d 1074 (1984); *In re Pers. Restraint of Richardson*, 100 Wn.2d 669, 679, 675 P.2d 209 (1983). In *Richardson*, the error at issue was a conflict of interest arising from Richardson's attorney's representation of a witness who was called at the trial. *Id.* at 678. There, this court acknowledged that ordinarily one raising an error in a PRP must also demonstrate prejudice. *Id.* at 679. However, under the facts, we concluded that the error, if proved, would provide automatic proof of the prejudice. *Id.* In *Boone*, we interpreted *Richardson* as suggesting that certain constitutional errors that are never harmless on direct will be presumed prejudicial in a PRP. *Boone*, 103 Wn.2d at 233 ("This court has recently held that prejudice to a personal restraint petitioner will be presumed for certain types of constitutional error. *In Re Richardson*, 100 Wn.2d 669, 679, 675 P.2d 209 (1983).").

Retreating from the broad holding in *Boone*, we stated in *St. Pierre* that "[i]n dicta, we have previously suggested constitutional errors which can never be considered harmless on direct appeal will also be presumed prejudicial for the purposes of personal

restraint petitions. We now reject this proposition." *St. Pierre*, 118 Wn.2d at 328 (citing *Boone*, 103 Wn.2d at 233). This court declined to adopt a rule that "would categorically equate per se prejudice on collateral review with per se prejudice on direct review." *Id.* at 329. Citing to *Richardson*, we opined that "some errors which result in per se prejudice on direct review will also be per se prejudicial on collateral attack" but that the interests of finality demand a higher standard in a collateral attack. *Id.*[3] As to the error claimed by St. Pierre, a defective charging document, we required the petitioner to prove actual and substantial prejudice on collateral review. *Id.*

Unlike the error in *Richardson*, deprivation of counsel, the error here is a misstatement of sentencing consequences. Following *St. Pierre*, this court has addressed the burden to show actual and substantial prejudice arising from an incorrect statement of sentencing consequences. In *In re Pers. Restraint of Fawcett*, 147 Wn.2d 298, 53 P.3d 972 (2002), the petitioner argued that his guilty plea was involuntary because the plea form erroneously implied he could receive a one year community placement term when the law in fact required two. *Id.* at 299-300. Fawcett violated the conditions of his community placement two months into his term, which resulted in revocation of his SSOSA. *Id.* at 300. This court held that despite misinformation about the term of community placement, the petitioner failed to show actual and substantial prejudice

---

[3] Justice Gordon McCloud's concurrence contends we have used *St. Pierre* to adopt a "one-size-fits-all" approach whereby *all* errors must be supported by actual and substantial prejudice. Concurrence at 4. This is incorrect. To the contrary, we recognize that not all errors that are per se prejudicial on direct review will also be per se prejudicial on collateral review.

We adopt *St. Pierre* insofar as it rejected a categorical approach. *St. Pierre* does speak of errors that "can never be considered harmless on direct appeal"—a category that would include the misstatement of Stockwell's statutory maximum. 118 Wn.2d at 328.

because he would suffer no future prejudice from the two year term that had been revoked during the first year. *Id.* at 302.

In *In re Personal Restraint of Isadore*, 151 Wn.2d 294, 88 P.3d 390 (2004), we again acknowledged the burden to show actual and substantial prejudice in a PRP but declined to impose the burden where it would not further the goals of finality. In *Isadore*, the petitioner pleaded guilty after being told that he would not face community placement as a consequence of his plea. *Id.* at 297. Over a year later, the prosecutor's office was notified that community placement was statutorily required and so the petitioner's sentence was amended to add community placement. *Id.* The petitioner filed a PRP seeking enforcement of the original plea agreement. *Id.* On review, this court acknowledged the burden on the petitioner to show prejudice. However, because Isadore did not have a prior opportunity for judicial review, the court applied the standard in *In re Personal Restraint of Cashaw*, 123 Wn.2d 138, 148-49, 866 P.2d 8 (1994), and only required Isadore to show unlawful restraint. RAP 16.4(b), (c); *Isadore,* 151 Wn.2d at 299 (citing *Cashaw*, 123 Wn.2d at 148-49 (determining threshold PRP requirements did not apply where there was no prior opportunity or avenue for obtaining judicial review)). We also noted that even if Isadore were required to meet the PRP prejudice standard, he had done so.

Against this backdrop, Stockwell makes several arguments in support of his claim that he is not required to show that he suffered actual and substantial prejudice as a result of the misstatement of the maximum sentence. First, he says that *Isadore* and *In re Pers.*

*Restraint of Bradley*, 165 Wn.2d 934, 205 P.3d 123 (2009), acknowledge that certain errors on direct appeal are presumed prejudicial in a PRP. We disagree. As mentioned earlier, the court in *Isadore* did discuss the actual and substantial standard but held that the *Cashaw* standard applied instead.[4] In *Bradley* the court cited to *Isadore.* The issue of whether errors that are presumed prejudicial on direct appeal are presumed prejudicial in a PRP was not before the court in either of these cases. As the Court of Appeals stated in *ETCO, Inc. v. Department of Labor & Industries*, 66 Wn. App. 302, 307, 831 P.2d 1133 (1992):

> Where the literal words of a court opinion appear to control an issue, but where the court did not in fact address or consider the issue, the ruling is not dispositive and may be reexamined without violating stare decisis in the same court or without violating an intermediate appellate court's duty to accept the rulings of the Supreme Court. "An opinion is not authority for what is not mentioned therein and what does not appear to have been suggested to the court by which the opinion was rendered." *Continental Mut. Sav. Bank v. Elliot*, 166 Wash. 283, 300, 6 P.2d 638, 81 A.L.R. 1005 (1932).

(Footnote omitted.)

Stockwell also argues that older cases, *Kitchen, Boone, Richardson,* and *Gunter,* support his claim that he is not required to meet the actual and substantial prejudice standard. As discussed above, this court specifically rejected the broad language in these cases that would hold that "constitutional errors which can never be considered harmless on direct appeal will also be presumed prejudicial for the purposes of personal restraint

---

[4] Arguably *Isadore's* discussion of the actual and substantial standard is dicta. However, even if it is essential to our holding, the discussion was in response to the State's argument that Isadore was required to show that misinformation about the direct consequences of his plea was material to his decision to plead guilty. The court was not answering the question posed here: is an error which is presumed prejudicial on direct review also presumed prejudicial on collateral review.

petitions." *St. Pierre*, 118 Wn.2d at 328 (citing *Boone*, 103 Wn.2d at 233). While acknowledging that some per se errors on direct review could also be per se prejudicial on collateral attack, we have had no occasion to decide whether a personal restraint petitioner who claims he was misinformed about the consequences of his plea must show that he was actually and substantially prejudiced by that error.[5]

Stockwell also argues that court rules support the conclusion that prejudice resulting from misinformation of a sentencing consequence argued on direct appeal is sufficient to meet actual and substantial prejudice in a PRP. He contends that the manifest injustice requirement in CrR 4.2[6] and manifest error requirement in RAP 2.5(a)[7] mirror the prejudice required in a PRP. In support, he cites to *Walsh* for the court's discussion that "manifest" means a showing of prejudice is made. *Walsh*, 143 Wn.2d at 8.

First, Stockwell's argument fails to recognize that CrR 4.2 is a trial court rule. Moreover, a motion to withdraw a plea after a judgment is entered is governed by CrR 7.8, not simply CrR 4.2(f).[8] CrR 7.8 states that a court may grant relief from a final judgment for mistakes, newly discovered evidence, fraud, where a judgment is void, or any other reason justifying relief. It applies to motions made within a reasonable time,

---

[5] The concurrence's characterization that structural errors defy a harmless error analysis is misplaced. Concurrence at 7.

[6] "The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2.

[7] "A party may raise the following claimed errors for the first time in the appellate court: . . . (3) manifest error affecting a constitutional right." RAP 2.5(a).

[8] "If the motion for withdrawal is made after judgment, it shall be governed by CrR 7.8." CrR 4.2(f).

and in the case of mistakes and newly discovered evidence, not more than one year after the judgment was entered. CrR 7.8(b). As we said in *State v. Lamb*, 175 Wn.2d 121, 128, 285 P.3d 27 (2012), "[a] finding of 'manifest injustice' does not automatically establish that relief is available under CrR 7.8(b)(5)." *See also State v. Robinson*, 172 Wn.2d 783, 263 P.3d 1233 (2011) (stating that if the petitioner had moved to withdraw his plea after the judgment was entered, he would have had to satisfy CrR 7.8(b) in addition to CrR 4.2(f)). CrR 7.8 represents a potentially higher standard than CrR 4.2(f) for withdrawing a plea. Just as a petitioner may need to meet a higher burden when withdrawing a plea postjudgment versus prejudgment, so should a petitioner in the context of a PRP. As to RAP 2.5, this rule pertains to the court's discretion to hear issues on appeal or review that were not objected to at trial. The rule does not govern a petitioner's burden in a PRP.

Finally, Stockwell argues that we are precluded from applying the actual and substantial prejudice standard because it would require a materiality inquiry that was rejected under *Isadore*, 151 Wn.2d at 302. *See also Bradley*, 165 Wn.2d at 940. In *Isadore*, we declined to adopt a materiality test that would consider how material an error was to a defendant's decision to plead guilty. 151 Wn.2d at 302.[9] However, a materiality inquiry, involving a hindsight review of defendant's motivations, is distinct from consideration of actual and substantial prejudice, which looks to the practical effects of a sentence. Considerations of actual and substantial prejudice do not require insight into

---

[9] It should be noted that even this court's views on materiality have changed over time. *See State v. Oseguera Acevedo*, 137 Wn.2d 179, 203, 970 P.2d 299 (1999) (plurality opinion) (considering whether the facts represented a "material factor" to the defendant's plea of guilty).

14

the defendant's state of mind and motivations, but simply look at the practical effects that resulted from error.

We do recognize that there may be some confusion arising from *Bradley* because there the court relied on direct appeal cases and on *Isadore* without discussing the prejudice standard imposed on a personal restraint petitioner. We take this opportunity to clarify that a PRP petitioner seeking to withdraw a plea based on a misstatement of the statutory maximum is required to satisfy the actual and substantial prejudice standard on collateral attack.

We next consider whether Stockwell was actually and substantially prejudiced by the misstatement of the maximum sentence.

Stockwell does not argue that he was actually and substantially prejudiced, nor do the facts suggest that he was. First, the sentence he received was statutorily authorized. Although the judgment and sentence misstated the maximum, he received an exceptional downward sentence, below both the stated maximum and the actual maximum. Moreover, his sentence was completed over two decades ago. *See State v. Hardesty*, 129 Wn.2d 303, 313-14, 915 P.2d 1080 (1996) (discussing double jeopardy as applied to sentencing and acknowledging that an erroneous sentence that has been fully served precludes imposition of a heightened sentence where the defendant acquires a legitimate expectation of finality). Under the facts here, Stockwell has failed to meet his burden to show that the error complained of resulted in actual and substantial prejudice.

## CONCLUSION

We hold that Stockwell was required to demonstrate actual and substantial prejudice resulting from the erroneous misstatement of the statutory maximum and that he has failed to meet this burden. We affirm the Court of Appeals.

Madsen, C. J.

WE CONCUR:

Fairhurst, J.

Wiggins, J.

González, J.

No. 86001-7

GORDON McCLOUD, J. (concurring)—This is a case about whether a personal restraint petitioner must show "actual and substantial prejudice" to prevail on a collateral challenge to a guilty plea where the petitioner was misadvised that the statutory maximum was 20 years when the actual maximum was life and where the sentence imposed was far lower than either 20 years or life. Under our prior case law, these are constitutional errors that would have been presumed prejudicial on appeal. The majority holds that for this particular constitutional error, the greater interest in finality that attaches postappeal militates in favor of an actual prejudice inquiry on personal restraint petition (PRP). I agree.

But I disagree with the two pillars of the majority's analysis. First, the majority completely redefines what "prejudice" means in this context. The majority holds that in the plea-bargain context, prejudice means only a sentence that is longer than the statutory maximum or longer than the maximum of which the petitioner was advised. But the due process clause actually guarantees a *procedure* that allows the defendant to make a knowing, intelligent, and voluntary plea decision. "Prejudice,"

therefore, occurs when an error undermines that procedure and the voluntariness of the plea—regardless of the sentence imposed. Second, the majority uses this case to undertake a radical reanalysis of the sort of prejudice that every personal restraint petitioner has been required to show in every other type of PRP. That radical reanalysis is not necessary to decide this case. In fact, the rule established in *In re Personal Restraint of Richardson*, 100 Wn.2d 669, 679, 675 P.2d 209 (1983), *overruled on other grounds by State v. Dhaliwal*, 150 Wn.2d 559, 568, 79 P.3d 432 (2003), *State v. Kitchen*, 110 Wn.2d 403, 413, 756 P.2d 105 (1988), and *In re Personal Restraint of Gunter*, 102 Wn.2d 769, 774, 689 P.2d 1074 (1984), and restated in *In re the Personal Restraint of St. Pierre*, 118 Wn.2d 321, 328, 823 P.2d 492 (1992)—that errors which are presumptively prejudicial on direct appeal will *generally* be presumed prejudicial in a PRP—is still good law. So although I concur in the outcome, I disagree with the majority's two main points.

## ANALYSIS

The majority's principal error is totally redefining what "prejudice" means in this context. The majority asserts that erroneous misadvice in the plea-bargain context does not cause prejudice unless the defendant gets a sentence higher than the maximum, majority at 15, or higher than what the plea agreement said, *id.* at 14. The majority even asserts that this prejudice inquiry "do[es] *not* require insight into

2

the defendant's state of mind and motivations, but simply look[s] at the practical effects that resulted from error." Majority at 14-15 (emphasis added).

This flatly contradicts state and federal due process clause jurisprudence. When we are dealing with the voluntariness of a plea, an error causes harm if it undermines the voluntariness of the *decision* to plead guilty—the process which is supposed to ensure a knowing, intelligent, and voluntary decision, not a particular sentence. This is true under our seminal decisions on this topic. *In re Pers. Restraint of Hews*, 108 Wn.2d 579, 594, 597, 741 P.2d 983 (1987) (*Hews* II) (court must examine "'totality of circumstances'" to determine whether petitioner understood nature of charge, elements, and whether Hews "had discussed with his attorney alternative courses of action"); *In re Pers. Restraint of Mendoza Montoya*, 109 Wn.2d 270, 277, 744 P.2d 340 (1987).[1] This is true under the United States Supreme Court's seminal decisions on this topic. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). This is true under United States Supreme Court decisions on the related topic of what constitutes ineffective assistance of

---

[1] Although our recent decisions on this topic apply the prejudice inquiry applicable on direct appeal (as opposed to PRP), they clearly state that the due process clause protects the voluntariness of the decision—the cost-benefit analysis—involved in the guilty plea process, regardless of the ultimate sentence imposed. *See State v. Weyrich*, 163 Wn.2d 554, 556-57, 182 P.3d 965 (2008); *State v. Mendoza*, 157 Wn.2d 582, 587, 590-91, 141 P.3d 49 (2006); *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 297-98, 88 P.3d 390 (2004).

counsel in the plea-advice context. *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1390-91, 182 L. Ed. 2d 398 (2012) (distinguishing inquiry applicable to ineffective assistance claim arising in the plea context from requirement that plea itself be "knowing and voluntary"; treating prejudice in the former context as having adverse effect on cost-benefit analysis involved in deciding whether to plead guilty); *Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) (defense counsel must advise defendant pleading guilty of the consequence of deportation to provide effective assistance).

The majority's approach departs from this constitutionally required focus on the voluntariness of the plea procedure. This flouts state and federal constitutional law. It is also illogical: since the defendant's only claim is that his plea was involuntary, that should be the center of the court's inquiry.

The majority supports its analysis with dicta from *St. Pierre* about a heightened prejudice standard ostensibly applicable in most—though *St. Pierre* did not say all[2]—PRPs. The majority suggests that *St. Pierre* established a one-size-fits-all "actual and substantial prejudice" prerequisite to relief for all PRPs.[3]

---

[2] In fact, *St. Pierre* explicitly stated that "some errors which result in per se prejudice on direct review will also be per se prejudicial on collateral attack . . . ." *St. Pierre*, 118 Wn.2d at 329.

[3] I note the majority's attempt to distance itself from this position. Majority at 10 n.3. The majority is correct to do that. As discussed below, however, the majority's

4

The majority does accurately report some of *St. Pierre*'s discussion. In the 20 years since *St. Pierre* was decided, however, its dicta has been substantially eroded. In fact, contrary to *St. Pierre*'s dicta, there is no single rule that personal restraint petitioners must show actual and substantial prejudice to obtain relief in all cases. Rather, under our controlling precedent, I identify four categories of PRPs triggering distinct analyses of prejudice.

First, we have PRPs alleging constitutional errors of the "trial"[4] type (as opposed to the "structural" type). In those cases, the petitioner must generally prove actual and substantial prejudice by a preponderance of the evidence to prevail. *E.g.*, *In re Pers. Restraint of Haverty*, 101 Wn.2d 498, 504, 681 P.2d 835 (1984); *St. Pierre*, 118 Wn.2d at 329.

Next, we have PRPs raising claims of nonconstitutional error. In those cases, the petitioner must prove a fundamental defect resulting in a complete miscarriage of justice, also by a preponderance of the evidence, to prevail. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005) (citing *In re Pers. Restraint of*

---

analysis could be used to conflate harmless error review of constitutional issues with harmless error review of nonconstitutional issues.

[4] *See generally Arizona v. Fulminante*, 499 U.S. 279, 309-311, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (Rehnquist, C.J., concurring) (holding admission of coerced confession to be "a classic 'trial error' . . . similar in both degree and kind to the erroneous admission of other types of evidence" and thus reviewable for harmlessness).

*Isadore*, 151 Wn.2d 298, 88 P.3d 390 (2004)), *overruled in part on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). This category includes, for example, many errors in sentencing calculation. *E.g., In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 864-65, 50 P.3d 618 (2002). These first two categories make sense because the value of finality weighs more heavily in favor of repose at the collateral challenge, as opposed to the appeal, stage of criminal proceedings.

In addition, this court has clearly recognized a category of PRP where the petitioner need not prove harm in addition to that which is inherent in proof of the error itself. This category includes claims of ineffective assistance of counsel and prosecutorial withholding of material exculpatory evidence. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 843, 280 P.3d 1102 (2012) (explaining that claims of ineffective assistance of counsel and prosecutorial withholding of exculpatory evidence "share [an] important characteristic . . . [in that] a petitioner who proves a violation [necessarily] shows prejudice," without any further, secondary requirement of additional prejudice on collateral review).[5] This category makes

---

[5] *Accord Kyles v. Whitley*, 514 U.S. 419, 435-36, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) (on federal habeas review of alleged *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) violation, once petitioner shows prosecutorial withholding of exculpatory evidence and materiality "there is no need for further harmless-error review").

sense because in these cases, proof of a harmful effect on the trial outcome inheres in claim itself.

Then there are PRPs raising claims of so-called "structural" error. Structural errors do not really trigger a presumption of harm at all. Instead, they so fundamentally undermine the adversarial process that they "defy analysis by 'harmless-error' standards." *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (Rehnquist, C.J., concurring); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n. 4, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). "Structural" errors resulting in automatic reversal on direct appeal include courtroom closure, *State v. Wise*, 176 Wn.2d 1, 15, 288 P.3d 1113 (2012); complete lack of counsel, *Gideon v. Wainwright*, 372 U.S. 335, 342-44, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); judicial bias, *Tumey v. Ohio*, 273 U.S. 510, 535, 47 S. Ct. 437, 71 L. Ed. 749 (1927); race discrimination in grand jury selection, *Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); and defective reasonable doubt instructions, *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). Our court has treated some errors of this sort as requiring automatic reversal when raised in a collateral attack, though without using the label "structural" error. *E.g., Richardson*, 100 Wn.2d at 673-74. This category makes sense because, as discussed above, structural defects "defy analysis by 'harmless-error' standards." *Fulminante*, 499 U.S. at 309 (Rehnquist, C.J., concurring).

7

To be sure, this court has not yet decided whether all structural errors, or to use different language, all errors that result in automatic reversal on direct appeal without proof of prejudice, must also result in automatic reversal in a PRP. But it has certainly held that some do. *See Kitchen*, 110 Wn.2d at 413 ("[t]hose types of constitutional errors which can never be considered harmless on direct appeal will also be presumed prejudicial for purposes of personal restraint petitions"). This court has, in effect, treated double jeopardy clause violations as falling into this category. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 820-22, 100 P.3d 291 (2004); *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 524, 242 P.3d 866 (2010); *State v. Mutch*, 171 Wn.2d 646, 663-64, 254 P.3d 803 (2011). It has ruled that the failure to require the State to prove its case beyond a reasonable doubt falls into this category. *Gunter*, 102 Wn.2d at 774. It has placed conflict of interest resulting in deprivation of counsel into this category. *Richardson*, 100 Wn.2d at 679 (counsel's actual conflict of interest falls into this category; query whether proof that the conflict was actual rather than potential in fact places this in the category with *Crace*-type errors).

Into which category does the plea-advice error alleged in this case fall? On direct appeal, we have presumed prejudice from an error in counsel's advice so apparently important that it could be presumed to have affected the knowing, intelligent, and voluntary nature of the plea. *State v. Weyrich*, 163 Wn.2d 554, 557,

8

182 P.3d 965 (2008); *State v. Mendoza*, 157 Wn.2d 582, 590, 141 P.3d 49 (2006); *Isadore*, 151 Wn.2d at 302.[6] On PRP, however, we traditionally put such errors into the first category described above, for constitutional errors of the "trial type," and required some proof of an effect on the petitioner's decision about whether to plead guilty. *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983) (*Hews* I) ("An invalid plea of guilty constitutes actual prejudice."); *Hews* II, 108 Wn.2d at 588-89 ("actual prejudice" established where petitioner shows that, when he pleaded guilty, "he did not possess the requisite understanding of the law in relation to the facts" (citing *Hews* I, 99 Wn.2d at 87)). When the petitioner claimed such prejudice, and the State disputed the existence of prejudice, the petitioner would get a reference hearing to resolve that factual issue. *Hews* I, 99 Wn.2d at 88 (citing RAP 16.11(a), 16.12). *Cf. Isadore*, 151 Wn.2d at 300 (where prosecutor neglected to inform petitioner of a direct consequence of his plea—a mandatory one-year community placement—petitioner was not required to show that the misinformation was

---

[6] The majority cites *State v. Oseguera Acevedo*, 137 Wn.2d 179, 203, 970 P.2d 299 (1999) (plurality opinion), as showing that "even this court's views on materiality have changed over time." Majority at 14 n.9. This is misleading. As this court unanimously recognized in *Isadore*, *Acevedo* was a plurality opinion stemming from "unique" facts and was never "intended to alter the longstanding rule . . . that a defendant must be informed of [all] direct consequences of his guilty plea." *Isadore*, 151 Wn.2d at 302. It is inaccurate to imply that a majority of this court ever employed a materiality inquiry—as opposed to a "direct consequence" inquiry—is cases where the defendant alleges his plea was not knowing, intelligent, and voluntary.

material to his decision to plead guilty; given peculiar procedural posture, however,

we applied the direct appeal prejudice standard).

The one exception is *In re Personal Restraint of Bradley*, 165 Wn.2d 934, 205

P.3d 123 (2009). In *Bradley*, we held that the petitioner was entitled to withdraw

his plea where the prosecution failed to advise him that his juvenile convictions

"should have 'washed out' of his offender score," *id.* at 938, because the court "will

not speculate" about that misadvice's actual effect but will instead presume that the

misadvice caused the plea. *Id.* at 940 (citing *Isadore*, 151 Wn.2d at 302). The

*Bradley* decision simply cited *Isadore* for this rule without noting that *Isadore* was

not subject to regular PRP requirements, given the peculiar procedural posture of

that case.[7] *Bradley* is therefore out of step with *Hews* I, *Hews* II, *Montoya*, and their

progeny. Instead, even though we presume prejudice on appeal from misadvice like

the misadvice in this case, we require a petitioner to show prejudice to prevail in a

PRP.

But the majority's erroneous redefinition of "prejudice" is completely out of

step with all of our prior case law and all of the United States Supreme Court's prior

---

[7] Because the period for direct appeal had passed when the community placement at issue was added to Isadore's original sentence, the court declined to apply "the heightened threshold requirements applicable to personal restraint petitions." *Isadore*, 151 Wn.2d at 299. The court expressly noted, however, that Isadore's claim would have succeeded even if he had been required to meet "the standard personal restraint petition requirements." *Id.* at 300.

case law. It essentially treats claims of constitutional error in the plea-bargain

process as nonconstitutional errors subject to a far more demanding prejudice

inquiry. The majority does this by demanding proof of not just actual and substantial

prejudice to the right at issue—the right to a knowing, intelligent, and voluntary plea

process—but something more. That something more seems to be proof of a far

longer sentence.

In sum, the majority has watered down the "prejudice" standard for this

category of constitutional error. Its analysis is not compelled by precedent. In fact,

it conflicts with our seminal PRP plea-advice cases and with state and federal

authority holding that the due process clause protects the plea process, not just the

plea outcome. The majority instead cites *St. Pierre*. But it cites *St. Pierre*'s dicta—

much of it now discredited—rather than *St. Pierre*'s holding.[8]

---

[8] This is particularly unfortunate given the internal contradictions in *St. Pierre*. In that case, this court considered whether an error in the charging document established per se prejudice on collateral review. *St. Pierre*, 118 Wn.2d at 328-29. The court concluded that it did not, and that the petitioner was not entitled to relief. *Id.* at 329-30. While its holding was limited to that relatively narrow issue, the *St. Pierre* opinion included several broad assertions about a petitioner's burden on collateral review *generally*. Those assertions conflate several distinct categories of PRP, with the result that the *St. Pierre* opinion is at times self-contradictory. For example, *St. Pierre* affirms the "actual and substantial prejudice" standard for relief on collateral review but notes that that burden "may be waived where the error gives rise to a conclusive presumption of prejudice." *Id.* at 328 (citing *Richardson*, 100 Wn.2d at 679). It also acknowledges that "some errors which result in per se prejudice on direct review will also be per se prejudicial on collateral attack," but nevertheless concludes that "the interests of finality . . . demand that a higher standard be satisfied in a collateral proceeding." *Id.* at 329.

11

CONCLUSION

Under our prior cases, a personal restraint petitioner can prevail only if he or she shows (1) a constitutional error that caused actual and substantial prejudice for constitutional errors of the "trial" type; (2) a nonconstitutional error that inherently caused a complete miscarriage of justice; (3) a limited number of constitutional errors where prejudice inheres in proof of the error itself—*Crace* explicitly placed *Strickland*[9] and *Brady*[10] errors into this category; or (4) structural errors (e.g., biased judge, courtroom closure, complete deprivation of counsel, improper beyond a reasonable doubt instruction) resulting in automatic reversible error. Here, Stockwell raises a constitutional error of the first type. He pleaded guilty after being erroneously advised that he faced a maximum sentence of 20 years, when the maximum sentence was actually imprisonment for life. *In re Pers. Restraint of Stockwell*, 161 Wn. App. 329, 331-32, 254 P.3d 899 (2011). Stockwell did not receive a sentence as high as either 20 years or life; he received a 24 month special sex offender sentencing alternative (SSOSA) sentence. He must therefore prove actual and substantial prejudice to his right to a knowing, intelligent, and voluntary plea-bargain process to prevail on his PRP. He need not prove a longer sentence

---

[9] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[10] *Brady v. Maryland*, 373 U.S. 83.

12

than the maximum or a longer sentence than he expected; in short, he need not prove the sort of complete miscarriage of justice that the majority's redefinition of "prejudice" would require.

He has not met his burden. He has made no allegation of prejudice at all. I would therefore deny Mr. Stockwell's PRP because he fails to meet the actual and substantial prejudice standard. I would not silently overrule the definition of prejudice that we adopted as far back as *Hews* I and *Montoya*, as the majority seems to do. I would not silently overrule our prior precedent retaining automatic reversible error on PRPs for certain especially intractable errors, e.g., *Richardson, Orange, Francis, Gunter, Mutch*, as the majority does. And I would not place this constitutional error into the nonconstitutional error category, as the majority does.

Gordon McCloud, J.

Stephens, J.