

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76573-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TAYLOR CHURCH, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 8, 2018 |
| | ) | |

VERELLEN, J. — A court may impose sanctions when the recipient of a residential drug offender sentencing alternative (DOSA) fails to comply with the terms of her judgment and sentence. RCW 9.94A.664(4) allows imposition of total confinement equal to one-half the midpoint of the standard range of the underlying sentence. Because the provisions of RCW 9.94A.664(4) are inapplicable to an offender who fails to report to residential treatment, they do not apply to Taylor Church.

Church also argues the State breached the plea agreement by recommending a standard range sentence after she failed to report to treatment. But she misconstrues the terms of the plea agreement.

Therefore, we affirm.

FACTS

On September 15, 2016, Taylor Church pleaded guilty to first degree residential burglary and solicitation to possess heroin. The trial court calculated an offender score of 4, which carries a standard range sentence of 15 to 20 months. In exchange for Church's guilty plea, the State agreed to recommend a residential DOSA. On September 29, 2016, the court accepted the State's recommendation and sentenced Church to three to six months of addiction treatment in a residential facility followed by two years of community custody.

Church failed to report to treatment. At a hearing on December 23, 2016, she admitted violating her sentence. The State requested revocation of Church's DOSA, but the court declined to do so and again ordered Church to report to a residential treatment facility. By February 10, 2017, Church still had not reported to treatment and again stipulated to violating her sentence. At a March 13, 2017, revocation hearing, the State recommended a 16-month sentence within the standard range, relying on RCW 9.94A.660(7)(c). Church argued that RCW 9.94A.664(4)(c) limited the court to one-half the midpoint of the standard range, or 8.75 months of total confinement. Specifically, Church contended the rule of lenity must apply to resolve an irreconcilable conflict between sections .660 and .664. The court revoked Church's DOSA for willfully failing to report to treatment as ordered and sentenced her to 15 months' incarceration pursuant to RCW 9.94A.660(7)(c).

Church appeals.

## ANALYSIS

"When a trial court exceeds its sentencing authority under the [Sentencing Reform Act of 1981, chapter 9.94A RCW], it commits reversible error."[1] Determining whether a trial court exceeds its authority under the Sentencing Reform Act is an issue of law, which the court reviews de novo.[2]

Issues of statutory interpretation are also legal questions subject to de novo review.[3] When engaging in statutory interpretation, a court's purpose is "'to determine and give effect to the intent of the legislature.'"[4] Legislative intent is derived, when possible, "solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole."[5]

RCW 9.94A.660 governs both prison-based and residential chemical dependency treatment-based DOSAs. If an offender meets the requirements in RCW 9.94A.660(1), then the court waives the standard range sentence and "impose[s] a sentence consisting of either a prison-based alternative under RCW 9.94A.662 or a residential chemical dependency treatment-based alternative under RCW 9.94A.664."[6] RCW 9.94A.660(7)(a) includes broad provisions for

---

[1] State v. Murray, 118 Wn. App. 518, 522, 77 P.3d 1188 (2003).

[2] State v. Button, 184 Wn. App. 442, 446, 339 P.3d 182 (2014).

[3] State v. Evans, 177 Wn.2d 186, 191, 298 P.3d 724 (2013).

[4] Id. at 192 (quoting State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012)).

[5] Id.

[6] RCW 9.94A.660(3).

sanctions applicable "at any time" to "any offender sentenced under this section" if they violate the conditions of their sentence or fail to make satisfactory progress in treatment. Specifically, RCW 9.94A.660(7)(c) provides:

> The court may order the offender to serve a term of total confinement within the standard range of the offender's current offense at any time during the period of community custody if the offender violates the conditions or requirements of the sentence or if the offender is failing to make satisfactory progress in treatment.

RCW 9.94A.664 sets out specific provisions for residential DOSAs. There is no period of total confinement. The residential DOSA offender is subject to community custody for the greater of 24 months or one-half the midpoint of the standard range "conditioned upon the offender entering and remaining in residential chemical dependency treatment for . . . between three and six months."[7] RCW 9.94A.664(4)(c) allows sanctions at a "progress hearing" or a "treatment termination hearing," including "a term of total confinement equal to one-half the midpoint of the standard sentence range, followed by a term of community custody under RCW 9.94A.701."[8]

The narrow issue here is whether Church qualifies for the more lenient sanction allowed under RCW 9.94A.664(4)(c).

RCW 9.94A.664(3)(b) requires the court to schedule both a "progress hearing" and a "treatment termination hearing." The former must be held "during

---

[7] RCW 9.94A.664(1).

[8] RCW 9.94A.664(4)(c). RCW 9.94A.701(4) in turn provides that if an offender is given a DOSA sentence, "the court shall impose community custody as provided in RCW 9.94A.660."

the period of residential chemical dependency treatment," and the latter must be held "three months before the expiration of the term of community custody."[9] The offender's treatment provider must write and send a treatment plan to the court "within thirty days of the offender's *arrival* to the residential chemical dependency treatment program."[10] "Upon receipt of the plan" from the treatment provider, "the court shall schedule a progress hearing during the period of residential chemical dependency treatment, and schedule a treatment termination hearing."[11]

The court's authority to impose sanctions based on RCW 9.94A.664(4)(c) requires satisfaction of the section's preconditions. These include the condition that the offender report to the facility for residential treatment.[12] Because Church never reported for treatment, she could not be evaluated, the treatment provider could not develop a treatment plan, and the court could not schedule a progress or termination hearing.[13] Therefore, Church's failure to report to treatment made the sanctions provision of RCW 9.94A.664(4)(c) inapplicable to her.

---

[9] RCW 9.94A.664(3)(b).

[10] RCW 9.94A.664(3)(a) (emphasis added).

[11] RCW 9.94A.664(3)(b).

[12] RCW 9.94A.664(1), (3)(a).

[13] The trial court explained that, in King County, several hearings are typically used to monitor the progress of residential DOSA offenders, not just a single progress and a single termination hearing. For example, King County superior courts often conduct an early review hearing to determine if the offender has reported for treatment and subsequent review hearings to monitor progress. Because of the statutory timing requirements, these review hearings are not necessarily the "progress hearing" or "treatment termination hearing" contemplated by the statute. In any event, the King County variations do not alter how we construe the statute.

Furthermore, the purpose of the DOSA statutes is "to provide meaningful treatment and rehabilitation incentives for those convicted of drug crimes, when the trial judge concludes it would be in the best interests of the individual and the community."[14] The same interests are at issue when the trial court decides the sanctions for noncompliance. Church's desired reading of RCW 9.94A.664(4) would undermine these interests by creating a disincentive to comply with the terms of a residential DOSA. Accepting Church's reading of the statutes, offenders would be tempted to agree to a residential DOSA and then fail to report in order to reduce a standard range sentence to half the midpoint of the standard range. This would undermine the DOSA statutes' purpose.

Because the plain language in RCW 9.94A.664 is unambiguous and sufficient to resolve this issue, we do not need to consider the broader question of the interplay between RCW 9.94A.660(7)(c), allowing incarceration for the standard range, and RCW 9.94A.664(4)(c), allowing incarceration for one-half the midpoint of the standard range when it is applicable.[15] That question would be best addressed on specific facts squarely presenting it.[16]

---

[14] State v. Grayson, 154 Wn.2d 333, 343, 111 P.3d 1183 (2005).

[15] See Evans, 177 Wn.2d at 192 ("Plain language that is not ambiguous does not require construction.").

[16] We note the State's observation at oral argument that the two statutes might be harmonized as allowing the trial court the option of selecting which of the two total confinement sanctions best meets the interests of the offender and the community upon revocation of a residential DOSA. This observation appears to fit with the DOSA statutes' purpose as stated in Grayson, 154 Wn.2d at 343.

For the first time on appeal, Church argues the State breached the plea agreement when it recommended a standard range sentence after she failed to report to treatment.[17]

When a plea agreement is unambiguous, as it is here, the court reviews the agreement de novo.[18]

"A plea agreement is a contract with constitutional implications."[19] The agreement is evaluated under basic contract principles.[20] The agreement binds the State and the defendant.[21] Because of a plea agreement's constitutional implications, "due process 'requires a prosecutor to adhere to the terms of the agreement.'"[22] The State is bound by the Constitution and the plea agreement's terms to recommend its promised sentence.[23]

At its most basic, Church's plea agreement bound the State to recommend a residential DOSA in exchange for her pleading guilty to residential burglary and

---

[17] The breach of a plea agreement may be raised for the first time on appeal as a manifest constitutional error. But to be considered "manifest," the facts necessary to review the claimed error must be in the appellate record. State v. Xaviar, 117 Wn. App. 196, 199, 69 P.3d 901 (2003); State v. Williams, 103 Wn. App. 231, 234, 11 P.3d 878 (2000).

[18] State v. Ramos, 187 Wn.2d 420, 433, 387 P.3d 650, cert. denied, 138 S. Ct. 467, 199 L. Ed. 2d 355 (2017).

[19] State v. Townsend, 2 Wn. App. 2d 434, 438, 409 P.3d 1094 (2018); see State v. Sledge, 133 Wn.2d 828, 838-39, 947 P.2d 1199 (1997).

[20] State v. McInally, 125 Wn. App. 854, 867, 106 P.3d 794 (2005).

[21] Sledge, 133 Wn.2d at 839 n.6.

[22] State v. MacDonald, 183 Wn.2d 1, 8, 346 P.3d 748 (2015) (quoting id. at 839).

[23] Id.

solicitation to possess heroin. The State made that recommendation at sentencing. Church's contention is based on the State's conduct after she failed to comply with the terms of her sentence.

The contested provisions of the plea agreement are in the State's residential DOSA recommendation form: "NONCOMPLIANCE with the requirements of the DOSA sentence while in community custody *will* result in imposition of sanctions, which *may* include a term of total confinement of up to one-half the midpoint of the standard range."[24]

Church's argument presumes that the State breached a promise to recommend total confinement up to one-half the midpoint of the standard range. But the State made no such promise. "'While the government must be held to the promises it made, it will not be bound to those it did not make.'"[25]

The "noncompliance" section of the plea agreement merely provides notice that sanctions will result for noncompliance. It then identifies an example of one sanction a court may impose. Church provides no authority that such a statement of one possible sanction is the same as a promise by the State that it will forgo recommending another available sanction. To the contrary, an equivocal

---

[24] Clerk's Papers at 39 (boldface omitted, emphasis added).

[25] WAYNE R. LEFAVE, JEROLD H. ISRAEL, NANCY J. KING, AND ORIN S. KERR, CRIMINAL PROCEDURE § 21.2(d) n.173 (4th ed. 2015) (quoting United States v. Fentress, 792 F.2d 461 (4th Cir. 1986)).

statement about which sanction might be imposed in the future is, in this context, no promise at all.[26]

Because the court did not err by declining to rely on RCW 9.94A.664(4) and the State did not breach the plea agreement, we affirm.

WE CONCUR:

_____

Becker, J.

_____

Andrus, J.

---

[26] See Washington Educ. Ass'n v. Washington Dep't of Ret. Sys., 181 Wn.2d 212, 225-27, 332 P.3d 428 (2014) (concluding that no binding promise was made when communications are "equivocal" and "too qualified"); accord United States v. Battle, 467 F.2d 569, 570 (5th Cir. 1972) (information relayed by prosecutor to defendant in plea bargaining "in equivocal terms such as 'could' and 'perhaps'" are not promises); United States v. Nuckols, 606 F.2d 566, 568 (5th Cir. 1979) (prosecutor "venturing a guess" as to length of sentence the appellant "could expect" is not an enforceable promise).