IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77648-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| COURTNEY WAYNE DAWSON, | ) | |
| | ) | FILED: June 10, 2019 |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — A defendant seeking to withdraw a guilty plea after entry of judgment must prove he did not enter it knowingly, intelligently, and voluntarily. Because Courtney Wayne Dawson's attorneys accurately apprised him about the plea agreement's terms and consequences, he entered his guilty plea voluntarily, intelligently, and knowingly. The court properly denied his CrR 7.8 motion to withdraw his plea.

A defendant also can withdraw his guilty plea where the State breaches the agreement. Dawson contends Oregon, which was party to his global plea agreement, breached by merely dismissing the charges against him and not doing so with prejudice. Because the plea agreement did not oblige Oregon to dismiss with prejudice, Oregon did not breach.

Therefore, we affirm.

## FACTS

Dawson flew from Colorado to Oregon and raped a woman at knifepoint.[1] Dawson then drove to Washington and raped another woman at knifepoint.[2] After being arrested in Washington, Dawson confessed to raping women in both states.[3] While awaiting trial, Dawson attempted to pay his second victim to recant her statements to the police.[4]

The State charged Dawson with first degree rape, first degree kidnapping, and bribing a witness, and Oregon indicted him for first degree rape, first degree sodomy, and first degree unlawful sexual penetration.[5] In a global plea agreement that disposed of all charges against him in both states, Dawson promised to plead guilty only to the charges in Washington. In exchange, Washington would recommend a 16-year sentence at the high end of the standard range, and Oregon would dismiss all charges against him.[6]

Dawson pleaded guilty. Nearly one year later, he moved to withdraw his plea because it was based on misinformation from his attorneys and because

---

[1] Clerk's Papers (CP) at 60-61. Oregon did not adjudicate Dawson's rape there in accordance with his plea agreement, but he admitted to the facts of that crime for purposes of sentencing and paying restitution to the victim. CP at 54; Report of Proceedings (RP) (June 6, 2013) at 10-11.

[2] CP at 24.

[3] RP (July 19, 2013) at 10-11.

[4] RP (June 6, 2013) at 14-15.

[5] CP at 10-11.

[6] RP (June 6, 2013) at 9-10.

2

Oregon did not dismiss charges against him with prejudice.[7] The court denied the motion.[8]

Dawson appeals.

## ANALYSIS

If a defendant moves under CrR 7.8 to withdraw a guilty plea due to claimed constitutional error, we conduct review de novo.[9] We review a court's factual findings for substantial evidence.[10] Substantial evidence supports a finding of fact where sufficient evidence would persuade a reasonable person of the finding.[11] Unchallenged findings are verities on appeal.[12] The defendant has the burden of proving that constitutional error occurred and that substantial evidence does not support challenged findings of fact.[13]

"'Due process requires that a guilty plea may be accepted only upon a showing the accused understands the nature of the charge and enters the plea intelligently and voluntarily.'"[14] A defendant must understand a plea's consequences, including possible sentencing consequences, for the plea to have

---

[7] CP at 81-90,105-06.

[8] CP at 278.

[9] State v. Buckman, 190 Wn.2d 51, 57, 409 P.3d 193 (2018).

[10] State v. A.N.J., 168 Wn.2d 91, 107, 225 P.3d 956 (2010).

[11] Id.

[12] Robel v. Roundup Corp., 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

[13] Buckman, 190 Wn.2d at 65; A.N.J., 168 Wn.2d at 107.

[14] Id. at 59 (quoting A.N.J., 168 Wn.2d at 117).

been made knowingly and voluntarily.[15] Constitutional error occurs if a plea is not made knowingly, intelligently, and voluntarily.[16]

Dawson argues one of his three trial attorneys misinformed him about the consequences of pleading guilty because she overstated the amount of early release time he could accrue.[17] Dawson's sole evidence, other than his own affidavit, is a sentence fragment in defense attorney Emily Gause's notes from a meeting they had on May 23, 2013.[18] For context, the notes follow in their entirety.

Meeting w/ Wayne          5/23/13

explained risks here Rape 1°   Kidnap 1°

would run consecutive       16+ yrs

Oregon 3 charges    100+ mm on each

300+ mo

WA would run consecutive to OR

Offer:  16 years      (roughly 10 more years)

       ISRB

sexual deviancy eval. → Bill Lennon[19]

---

[15] Id. (citing In re. Pers. Restraint of Stockwell, 179 Wn.2d 588, 594-95, 316 P.3d 1007 (2014)).

[16] Id. at 59-60 (holding constitutional error occurred where a defendant pleaded guilty after being misinformed about the consequences).

[17] Appellant's Br. at 4.

[18] Id. (citing CP at 197); CP at 94 (arguing in his CrR 7.8 affidavit that Gause misinformed him).

[19] CP at 197.

Relying on the fragment "roughly 10 more years" and his affidavit, Dawson argued below that Gause misinformed him about the length of his sentence based on how she calculated his potential early release time.[20] The court found Dawson's "assertions and allegations are not credible."[21] It also found Gause "did not misinform the defendant as to his 'good time' calculation."[22] Dawson challenges only this finding as lacking substantial evidence.[23]

RCW 9.94A.729(3)(c) caps the maximum aggregate early release time a defendant may earn at 10 percent where he has been convicted of a serious violent offense. Gause submitted an affidavit stating she "did not and would have never informed [Dawson] that his good time was 25 [percent]" because "I was well aware that the good time on Rape in the First Degree was 10 [percent]."[24] To support her affidavit, Gause submitted additional meeting notes and a memo written for Dawson. Those documents show she told him the early release accrual amount was 10 percent.[25] For example, Gause's memo goes through the mathematical steps to demonstrate how a 16-year sentence can, with time served and early release time, result in a sentence of approximately 13 years. In addition to showing the math, her notes state the phrase "good time (10%)" in two different

---

[20] CP at 85-86, 94; RP (Sept. 27, 2017) at 7-8.

[21] CP at 268.

[22] CP at 267.

[23] Appellant's Br. at 1.

[24] CP at 257.

[25] CP at 187-88, 190.

calculations.[26] Based on this evidence, a reasonable person could be persuaded that Gause did not misinform Dawson. Finding of fact 8 is supported by substantial evidence.

In addition to finding of fact 8, the court's unchallenged findings support its conclusion. These findings are verities on appeal.[27] Significantly, the court found Dawson's asserted facts were "not credible."[28] It also found that another of Dawson's attorneys never misinformed him about the duration of his sentence, and that Dawson understood the consequences of pleading guilty.[29] The court's findings show Dawson knowingly, intelligently, and voluntarily entered his plea.[30] He fails to establish a constitutional error.

Dawson filed a statement of additional grounds in which he contends the State breached the plea agreement because Oregon did not dismiss all charges against him with prejudice.[31]

We review unambiguous plea agreements de novo.[32] Because "'[a] plea agreement is a contract with constitutional implications," we evaluate plea

---

[26] CP at 188.

[27] Robel, 148 Wn.2d at 42.

[28] CP at 268.

[29] CP at 267.

[30] Dawson also argued to the trial court that he is dyslexic and, consequently, struggled to understand the plea agreement. But the court credited Gause's assertion "that she never observed [Dawson] struggle mentally or display any substantive disability." CP at 277. Dawson does not challenge this finding of fact on appeal.

[31] SAG at 1-2.

agreements using basic contract principles.[33] We interpret a plea agreement to give effect to the parties' intent as shown by their objective manifestations.[34] We consider the whole record objectively to determine whether the State breached a plea agreement.[35]

On May 29, 2013, Dawson signed a felony plea agreement stating, "Oregon will dismiss its indictment following sentencing."[36] During his plea hearing, the court explained Oregon's obligation to Dawson:

> Now, there is one promise that's been made that hasn't been incorporated into this contract formation process, and that's the agreement that the Oregon authorities, who are now party to this case, will take certain actions down there in dismissing a pending charge against you. Beyond that, is there any other promise that's been made, any expectation that you have that we ought to put on the record as a part of this agreement?[37]

Dawson responded, "No, sir. Not that I'm aware of. No, sir."[38]

---

[32] State v. Church, 5 Wn. App. 2d 577, 584, 428 P.3d 150 (2018) (quoting State v. Ramos, 187 Wn.2d 420, 433, 387 P.3d 650, cert. denied, — U.S. —, 138 S. Ct. 467, 199 L. Ed. 2d 355 (2017)).

[33] Id. (quoting State v. Townsend, 2 Wn. App. 2d 434, 438, 409 P.3d 1094 (2018)).

[34] See State v. Chambers, 176 Wn.2d 573, 580-81, 293 P.3d 1185 (2013) (citing State v. Turley, 149 Wn.2d 395, 400, 69 P.3d 338 (2003)).

[35] State v. Carreno-Maldonado, 135 Wn. App. 77, 83, 143 P.3d 343, 349 (2006).

[36] CP at 54.

[37] RP (June 6, 2013) at 20. Because the Oregon authorities were never joined as parties in this Washington criminal proceeding, we note the phrase "who are now a party to this case" appears to contain a transcription error, and it is likely the court stated, "who are not a party to this case." In either event, the outcome of the appeal is the same.

[38] Id.

The prosecutor reiterated this obligation: "One of the conditions on this is that the Oregon authorities, Oregon prosecutor's office, will at the time of sentencing dismiss the indictments that they have currently against you with respect to a victim by the name of [M.J.S.]. Do you understand that?"[39] Dawson replied, "I do, sir."[40] Neither colloquy refers to dismissal with prejudice.

The only evidence of a possible dismissal with prejudice is an e-mail that a prosecutor from King County, Washington sent to Dawson's attorneys more than two weeks earlier stating that Oregon "has agreed to dismiss their indictments with prejudice."[41] But Dawson provides no evidence that he knew of this e-mail at the time of his plea hearing. And both the State and the court told Dawson unambiguously that Oregon's offer was to dismiss the indictments against him, not that they would be dismissed with prejudice. Because Dawson does not show that the parties to the plea agreement understood it as requiring dismissal with prejudice at the time it was made, he fails to show any breach of the agreement.

Therefore, we affirm.

WE CONCUR:

_____

Andrus, J.

_____

_____

---

[39] Id. at 10.
[40] Id.
[41] CP at 108.