IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 26830-6-III |
| Respondent, | ) | consolidated with 26204-9-III |
| | ) | |
| v. | ) | |
| | ) | |
| DALLIN D. FORT, | ) | |
| | ) | PUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| In the Matter of the Personal Restraint | ) | |
| Petition of: | ) | |
| | ) | |
| DALLIN D. FORT, | ) | |
| | ) | |
| Petitioner. | ) | |

FEARING, J. — We enter a quagmire of appellate and personal restraint petition procedural rules. We consolidated a personal restraint petition and a second direct appeal filed by Dallin D. Fort upon his convictions for child rape. We agree that, at trial, Fort's public trial rights were violated when counsel and the trial court questioned potential jurors in the judge's chambers without the trial court performing a *Bone-Club* analysis, as *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995) requires. Fort did not waive the

right, nor did he invite error. After reaching these initial holdings, we must determine whether Fort may raise the violation of his constitutional rights in his second direct appeal or in an amended personal restraint petition.

We refuse reversal of Dallin Fort's convictions by way of his second direct appeal. Nevertheless, we hold he may champion his public trial rights through an ineffective assistance of counsel claim, which Fort asserts in a supplemental brief in support of his personal restraint petition. The supplemental brief arrived more than one year after Fort first filed his personal restraint petition. But the one-year bar for bringing a personal restraint petition does not hinder Fort's delayed assertion of ineffective assistance because Fort filed the amendment during the pendency of his second appeal. Because of the pendency of the appeal, his judgment and sentence was not final and the one-year period had not commenced. While recognizing the expense and trauma of another trial, the sanctity of constitutional rights and Supreme Court precedence compel that we grant Dallin Fort a new trial.

## FACTS

In the summer of 2003, Dallin Fort helped care for his nine-year-old niece, A.W. Fort awakened A.W. almost every morning during darkness, touched her vagina and compelled her to touch his penis. Fort sometimes put a vibrator inside A.W.'s vagina and sometimes placed her mouth on his penis. *State v. Fort*, noted at 140 Wn. App. 1023, 2007 WL 2476003 at *1.

No. 26830-6-III; No. 26204-9-III
*State v. Fort; consol. with In re Pers. Restraint of Fort*

PROCEDURE

This case has a long and knotty procedural history that is complicated by appellate decisions in parallel cases. An appendix to this opinion provides a quick chronology of the case.

On November 10, 2005, the State of Washington charged Dallin Fort with three counts of rape of a child in the first degree and one count of child molestation in the first degree. The case proceeded to trial with jury selection occurring on January 30, 2006. The trial court asked potential jurors to complete a questionnaire about whether they, or someone they knew, suffered sexual abuse or a sexual assault. The record does not suggest that Fort requested use of the questionnaire or participated in its creation. The trial court told the venire, "I am sure that you can appreciate the need for discussing these matters [sexual abuse]. But, also, we try to respect your privacy in these matters as much as we can." Clerk's Papers (CP) at 83. The trial court, based on responses to the questionnaire, interviewed potential jurors in chambers. The trial court did not conduct a *Bone-Club* analysis before closing voir dire.

Dallin Fort did not object to the questioning of jurors in the court chambers. Fort waived his right to be present for the interviews in chambers. Fort told the court then:

> Well, the reason why I decided not to be present was because I felt if the people had experiences, that if I was in the room with them, then they would know what I have been charged with and that they would feel uncomfortable with me in the room and wouldn't be as open to discussion with my attorney.

3

Report of Proceedings (RP) Jan. 30, 2006 at 41 (record from first appeal 25139-0-III). In

chambers, jurors 6, 7, 11, 12, and 13 disclosed incidents of sexual abuse or assault and

expressed an inability to be impartial. The trial court excused these jurors for cause.

On February 3, 2006, the jury found Dallin Fort guilty of two counts of rape of a

child in the first degree, but acquitted Fort of the two other charges. On April 3, 2006,

the trial court sentenced Fort to a minimum of 132 months' confinement with a maximum

term of life.

On April 21, 2006, Dallin Fort appealed to this court. Fort's trial counsel filed the

notice of appeal and designated portions of the record for transcription. Counsel did not

designate voir dire for transcription. Fort avers that his appellate counsel noticed the

omission. Appellate counsel moved the trial court for public funds to supplement the

transcript.

On May 15, 2006, the trial court set an appeal bond at $150,000. Dallin Fort's

parents encumbered their home to satisfy the bond. On November 1, 2006, the trial court

released Fort pending appeal.

On October 24, 2006, appellate counsel for Dallin Fort filed the brief for Fort's

first direct appeal. In the brief, Fort argued that the prosecutor engaged in prejudicial

misconduct and the trial court erred in failing to consider his two convictions to be the

same criminal conduct for purposes of sentencing. *State v. Fort*, 2007 WL 2476003 at

*1. Fort did not claim a violation of his public trial rights during this first appeal. On

4

December 15, 2006 and before this court's ruling in the first appeal, the trial court ordered voir dire from Dallin Fort's trial to be transcribed at public expense.

On June 12, 2007, Dallin Fort filed a personal restraint petition, in which he argued that the trial court violated his and the public's right to the open administration of justice.

On September 4, 2007, in an unpublished opinion, this court affirmed Dallin Fort's convictions, but reversed the sentence and remanded for resentencing. *State v. Fort*, 2007 WL 2476003 at *4. This court held that the trial court erred in failing to count Fort's two convictions as the same criminal conduct. *State v. Fort*, 2007 WL 2476003 at *2-3.

On September 13, 2007, this court published its decision in *State v. Frawley*, 140 Wn. App. 713, 167 P.3d 593 (2007), *aff'd*, 181 Wn.2d 452, 334 P.3d 1022 (2014), in which we reversed and remanded a criminal prosecution for a new trial because the trial court closed voir dire without weighing the *Bone-Club* factors on the record. The timing of the *Frawley* decision and this court's decision in Dallin Fort's first appeal is important. We analyze the legal impact of each decision's timing below.

On December 4, 2007, this appeals court issued its mandate to the superior court. The mandate reads, in relevant part:

> This is to certify that the Opinion of the Court of Appeals of the State of Washington, Division III, filed on **September 4, 2007** became the decision terminating review of this court in the above-entitled case on

5

> **November 15, 2007**. The cause is mandated to the Superior Court from which the appeal was taken for further proceedings in accordance with the attached true copy of the Opinion.
>
> **Court Action Required**: The sentencing court or criminal presiding judge is to place this matter on the next available motion calendar for action consistent with the Opinion.

CP at 64. Handwritten on the mandate is the phrase: "Remanded for Re-Sentencing."

CP at 64.

On January 3, 2008, Dallin Fort moved the trial court to grant him a new trial or vacate his judgment and sentence based on this court's decisions in *State v. Frawley*, 140 Wn. App. 713, and *State v. Duckett*, 141 Wn. App. 797, 173 P.3d 948 (2007). In other words, Fort, by his motion, assigned error to the closure of the courtroom during voir dire. In support of Fort's motion for a new trial, his father declared:

> I was present in the courtroom when the trial court advised the prospective jurors that they would be taken into chambers to discuss the answers to the jury questionnaire. I was not aware that I could object to the closure of the courtroom. No one asked if I objected to the closure of the courtroom. Had I been asked, I would have objected to the courtroom being closed as I had a great interest in observing my son's trial.

CP at 112.

On January 14, 2008, this court stayed its consideration of Dallin Fort's personal restraint petition pending our Supreme Court's decision on whether to accept review in *Frawley*.

On January 25, 2008, the trial court held a hearing to resentence Dallin Fort according to this court's September 4, 2007 decision and December 4, 2007 mandate.

Before resentencing, the trial court heard argument on Fort's motion for a new trial

because of a violation of public trial rights. The trial court refused to apply this court's

ruling in *Frawley* retroactively and denied Fort's motion. The trial court commented:

> And I think that kind of highlights that, you know, really, the
> Frawley decision caught everybody off guard and came out of left field, so
> to speak, because that was, certainly, the established practice as far back as
> anybody can remember doing these kinds of cases; that—to respect the
> privacy of—of the prospective jurors that we would question them about
> prior sexual assaults, those kind of things, in private session.
>
> . . . .
>
> As the motion for new trial sits before this Court, I think it raises
> in my mind a question as to whether a convicted defendant whose appeal is
> final and whose judgment is final can avail himself or herself of—of a
> decision that, effectively, you know, changes the law. In other words, does
> Mr. Fort get the benefit of the Frawley decision or would that view—be
> viewed as prospective only? And this, again, gets into fairly technical
> discussion about whether, you know, the Frawley decision is one which
> might have been anticipated or not or whether it represented truly a new
> change in law that could not have been anticipated at the time that this
> Court was operating.
>
> My view is, you know—and, certainly, I'm sure that this isn't the
> last time that this fine point will be discussed—is that, you know, Frawley
> did represent a change of law; that, in my view, at least in terms of a
> defendant in Mr. Fort's position whose appeal has been concluded and has
> that aspect of finality to it, that the change of law does not work to his—to
> his benefit; that it would, in my view, only be applicable to those cases
> where a finality of judgment had not been achieved. Obviously, the—the
> final call on that is going to be up to the Court of Appeals or the Supreme
> Court; but that's the way I see it; that—that Frawley would not have a
> retroactive application should the Frawley decision survive before the
> Supreme Court.
>
> You know, so, therefore, it's my belief that, you know, the status
> of Frawley as justification for a new trial before this Court does not satisfy
> the criteria that I think should be applied in this kind of a situation; and I
> would, accordingly, deny the motion for new trial. I would believe that the
> appropriate thing to do is to go ahead and enter a sentence—or an amended

7

sentence as to Mr. Fort at this time, and that's the basis upon which I want
to proceed today.

Report of Proceedings (RP) at 6-9. After denying Dallin Fort's motion for a new trial,

the trial court resentenced Fort to a minimum of 108 months confinement with a

maximum term of life.

At the January 25 hearing, Dallin Fort urged the trial court, based on the $150,000

appeal bond previously posted, to stay his incarceration pending our Supreme Court's

review of *Frawley*. The trial court refused a stay. A warrant of commitment sent Fort to

jail on February 1, 2008.

On February 5, 2008, Dallin Fort filed his second notice of appeal. In his notice of

appeal, he sought review of the trial court's denial of his motion for a new trial. On

February 11, 2008, under RAP 8.2(d), Fort petitioned this court to stay his sentence and

release him pending the Supreme Court's ruling in *Frawley*.

On March 19, 2008, Dallin Fort filed his opening brief for his second direct

appeal. Fort assigned error to the trial court's denial, at resentencing, of his motion for a

new trial because of a violation of his public trial right. Fort argued that the trial court, in

order to grant a new trial, did not need to retroactively apply this court's ruling in

*Frawley* since this court's mandate for resentencing did not terminate direct review. In

other words, Fort argued he remained under his first appeal. In his opening brief for his

second direct appeal, Fort did not assert ineffective appellate counsel for failing to assert

a violation of his public trial rights in the first direct appeal.

On April 24, 2008, this court's commissioner denied Dallin Fort's motion to stay execution of his sentence pending review. This court relied on CrR 3.2(h) and RCW 9.95.062, the latter which provides in part: "[A]n appeal by a defendant convicted of one of the following offenses shall not stay execution of the judgment of conviction: . . . rape of a child in the first, second, or third degree." RCW 9.95.062(2). Fort did not move to modify the commissioner's ruling.

On July 3, 2008, this court stayed Dallin Fort's second direct appeal because of pending Supreme Court decisions. On February 26, 2013, this court lifted its stay of Fort's second direct appeal. We then directed the parties to provide supplemental briefing on *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012); *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012); and *In re Personal Restraint of Morris*, 176 Wn.2d 157, 288 P.3d 1140 (2012).

On April 8, 2013, our Supreme Court granted review of this court's decision in *Frawley*. *State v. Frawley*, 176 Wn.2d 1030, 299 P.3d 19 (2013). On April 26, 2013, this court scheduled Fort's second direct appeal for consideration on June 12, 2013 without oral argument. On May 3, 2013, this court reinstituted its stay of Fort's second direct appeal given our Supreme Court's granting of review of *State v. Frawley*, 140 Wn. App. 713, 167 P.3d 593 (2007). In the meantime, Fort's personal restraint petition remained stayed. On March 24, 2014, this court expanded the stay of Dallin Fort's

9

personal restraint petition to await, in addition to *Frawley*, our Supreme Court's

disposition and mandate in *In re Personal Restraint of Speight*, 182 Wn.2d 103, 340 P.3d

207 (2014) and *In re Personal Restraint of Coggin*, 182 Wn.2d 115, 340 P.3d 810 (2014).

The state Supreme Court published its opinion in *Frawley* on September 25, 2014.

*State v. Frawley*, 181 Wn.2d 452, 334 P.3d 1022 (2014). This court lifted its second stay

of Fort's second direct appeal on November 5, 2014. We also granted the parties an

opportunity to file supplemental briefing regarding the applicability of our Supreme

Court's opinion in *Frawley*.

On December 11, 2014, our Supreme Court published its decision in both *Speight*

and *Coggin*. *Speight*, 182 Wn.2d 103; *Coggin*, 182 Wn.2d 115. On February 19, 2015,

this court lifted its stay of Fort's personal restraint petition and consolidated the petition

with Fort's second direct appeal.

Dallin Fort and the State both accepted this court's invitation to file supplemental

briefing. In his supplement brief on April 3, 2015, Fort argues for the first time that

appellate counsel for his first direct appeal was ineffective for not asserting a public trial

violation:

> The appellate counsel was aware of the public trial violation because
> he had ordered the voir dire transcription for this very reason. The direct
> appeal attorney was also aware of the public trial violation because he knew
> of the [Personal Restraint Petition] when it was filed on June 11, 2007.
> Nevertheless, appellate counsel did not supplement his brief and assign
> error to the violation of the state and federal constitutions public trial rule.
> Had he done so, Mr. Fort would have received a new trial. There was no

tactical benefit or strategy in not raising this issue. This failure was ineffective assistance of counsel.

Supp. Br. of Petitioner at 2.

## LAW AND ANALYSIS

The difficult questions for this court to resolve are: whether Dallin Fort may gain a new trial because of the violation of his public trial rights when raising the issue for the first time in the trial court on a remand for resentencing; whether Dallin Fort may champion his public trial rights for the first time, in this court, during his second direct appeal; whether he may successfully directly assert the infringement of his public trial rights in a personal restraint petition when he cannot show actual prejudice; and whether Fort may assert his public trial rights indirectly by claiming ineffective assistance of counsel in his supplemental personal restraint petition brief. The first, second, and fourth questions concern, in part, the timeliness in assigning error to the closure of the courtroom during voir dire. These three of the four questions assume that the closure infringed on Dallin Fort's right to a public trial. Thus, before resolving these complicated and arduous enquiries, we must first uncover if Dallin Fort's constitutional rights were breached when the trial court conducted a portion of jury selection in its chambers. If we hold that the closed voir dire contravened Fort's rights, we must also resolve whether Fort waived his rights or invited the error.

11

*Public Trial Rights Violation*

Dallin Fort contends the trial court violated his and the public's right to the open administration of justice without first weighing the *Bone-Club* factors on the record when the trial court questioned jurors in chambers. We readily agree.

Washington's Constitution guarantees both the public and the accused a right to the open administration of justice. Article I, section 10 of the Washington Constitution reads, "Justice in all cases shall be administered openly, and without unnecessary delay." This provision entitles the public and the press, as representatives of the public, to openly administered justice. *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 209, 848 P.2d 1258 (1993); *Cohen v. Everett City Council*, 85 Wn.2d 385, 388, 535 P.2d 801 (1975). Article I, section 22 of the Washington Constitution provides, in pertinent part, "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial." The state constitution's provisions echo the United States Constitution's Sixth Amendment, applicable to the states through the Fourteenth Amendment due process clause. The Sixth Amendment directs, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." *In Re Oliver*, 333 U.S. 257, 267, 68 S. Ct. 499, 92 L. Ed. 682 (1948).

Our nation's highest court has issued two seminal opinions regarding an accused's right to an open trial, each involving proceedings from Georgia: *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) and *Presley v. Georgia*, 558 U.S. 209,

12

130 S. Ct. 721, 175 L. Ed. 2d 675 (2010). In *Presley v. Georgia*, the state trial court excluded, over the accused's objection, the accused's uncle and other members of the public from the courtroom during voir dire. The *Presley* Court summarily reversed Eric Presley's conviction. The public trial right extended to voir dire. The trial court should have explored other alternatives to closing the courtroom before excluding the public.

From *Waller*, *Presley*, and other federal court precedence come the following principles of law. An accused holds the right under the federal constitution's Sixth Amendment to insist on a public trial. *Waller*, 467 U.S. at 44. Nevertheless, the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. *Waller*, 467 U.S. at 45. Such circumstances will be rare, however, and the balance of interests must be struck with special care. *Waller*, 467 U.S. at 45. The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. *Waller*, 467 U.S. at 45; *Press-Enter. Co. v. Superior Court of CA*, 464 U.S. 501, 510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984). The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered. *Waller*, 467 U.S. at 45; *Press-Enter. Co.*, 464 U.S. at 510. The Washington Constitution provides at a minimum the same protection of a defendant's public trial rights as the United States Constitution's Sixth Amendment.

13

*State v. Bone-Club*, 128 Wn.2d at 260 (1995); *Federated Publ'ns, Inc. v. Kurtz*, 94 Wn.2d 51, 60, 615 P.2d 440 (1980).

The federal and state constitutional right to a public trial embodies various values and advances many goals. The central aim of a criminal proceeding must be to try the accused fairly, and cases uniformly recognize the public trial guarantee as one created for the benefit of the defendant. *Waller,* 467 U.S. at 46; *Gannett Co. v. DePasquale*, 443 U.S. 368, 380, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979). The requirement of a public trial benefits the accused because of the presence of the public to see he is fairly dealt with and not unjustly condemned. *Waller*, 467 U.S. at 46. In Dallin Fort's prosecution, his father, a member of the public, wished to view the trial, including questioning of the venire. The presence of interested spectators may keep the accused's triers keenly alive to a sense of their responsibility and to the importance of their functions. *Waller*, 467 U.S. at 46. Essentially, the public trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings. *Estes v. Texas*, 381 U.S. 532, 588, 85 S. Ct. 1628, 14 L. Ed. 2d 543 (1965) (Harlan, J., concurring).

The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power. *In re Oliver*, 333 U.S. at 270 (1948). In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward

14

and discourages perjury. *Oliver*, 333 U.S. at 270 n.24; *Waller*, 467 U.S. at 46. Finally, open courts are essential to the courts' ability to maintain public confidence in the fairness and honesty of the judicial branch of government as being the ultimate protector of liberty, property, and constitutional integrity. *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d at 211 (1993). The public nature of trials provides for accountability and transparency, assuring that whatever transpires in court will not be secret or unscrutinized. *State v. Wise*, 176 Wn.2d at 6 (2012). Openness allows the public to see, firsthand, justice done in its communities. *Wise*, 176 Wn.2d at 6.

Based on the teachings of the United States Supreme Court's decision in *Waller v. Georgia*, the Washington Supreme Court adopted an analysis to follow before a trial court closes the courtroom to public viewing. The state high court fabricated the analysis in the First Amendment, not the Sixth Amendment, case involving a press challenge to the trial court's closure of the courtroom during a murder defendant's motion to dismiss and the sealing of court records from the hearing. *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982). The *Ishikawa* court issued the following assessment for closure:

1. The proponent of closure or sealing must make some showing of the need for doing so, and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.

2. Anyone present when the closure motion is made must be given an opportunity

15

to object to the closure.

3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

4. The court must weigh the competing interests of the proponent of closure and the public.

5. The order must be no broader in its application or duration than necessary to serve its purpose. *Ishikawa*, 97 Wn.2d at 37-39.

The Washington Supreme Court, in *State v. Bone-Club*, 128 Wn.2d at 258-59 (1995), adopted the *Ishikawa* guidelines in a criminal case, when the defendant claimed his public trial right was violated. Since then, courts, in criminal appeals, have referred to the five step analysis as the *Bone-Club* criteria, factors, or analysis. The *Bone-Club* court actually created a sixth requirement: the trial court should enter specific findings showing the weighing of the competing interests before closing the courtroom. 128 Wn.2d at 260.

Since every trial is unique, the trial court must, on a case by case basis, weigh the competing interests before ordering a temporary or full closure of the courtroom. *Bone-Club*, 128 Wn.2d at 256. Although the public trial right may not be absolute, protection of this basic constitutional right demands that a trial court resist a closure motion except under the most unusual circumstances. *Bone-Club*, 128 Wn.2d at 259; *State v. Easterling*, 157 Wn.2d 167, 174-75, 137 P.3d 825 (2006). Trial courts are obligated to

16

take every reasonable measure to accommodate public attendance at criminal trials. *Presley*, 558 U.S. at 215; *State v. Leyerle*, 158 Wn. App. 474, 481, 242 P.3d 921 (2010).

The obligation to identify a compelling interest, weigh the competing interests, and analyze less restrictive alternatives is on the trial court. *Bone-Club*, 128 Wn.2d at 261. Trial courts must consider alternatives to closure even when they are not offered by the parties. *Leyerle*, 158 Wn. App. at 481. Reviewing courts may not engage in the *Bone-Club* analysis if the trial court fails to do so, such that a trial court's failure to enter findings is nearly an automatic remand for a new trial. *State v. Strode*, 167 Wn.2d 222, 228, 217 P.3d 310 (2009); *Bone-Club*, 128 Wn.2d at 261. Regardless of an overriding interest in closing the courtroom, the reviewing court will reverse if the trial court did not make appropriate findings. *Leyerle*, 158 Wn. App. at 481.

Dallin Fort's trial court conducted closed proceedings only during a portion of jury selection. The guaranty of open criminal proceedings extends to the process of voir dire, which is itself a matter of importance not simply to the adversaries but to the criminal justice system. *Press-Enter. Co. v. Superior Court of CA*, 464 U.S. at 505 (1984); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 804, 100 P.3d 291 (2004).

In 2004, one year before Dallin Fort's trial and three years before this court's *Frawley* decision, our state high court addressed the application of the *Bone-Club* factors to the closure of the courtroom during voir dire. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 100 P.3d 291 (2004). In *Orange*, because of space limitations in the

17

courtroom, the trial court excluded the public, including the accused's family members, from the room during jury selection. The Supreme Court granted Christopher Orange's personal restraint petition and remanded the case for a new trial. The court noted that approving the trial court's closure of voir dire would undermine twenty years of legal precedence.

Also before Dallin Fort's trial, the Evergreen State high court, in *State v. Brightman*, 155 Wn.2d 506, 122 P.3d 150 (2005), reversed another criminal conviction because of closure of jury selection to the public without consideration of the *Bone-Club* factors. In *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012) and *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012), the Supreme Court solidified the role of the public trial right in the context of voir dire. In *Wise* and *Paumier*, the respective trial courts, without performing a *Bone-Club* analysis, conducted questioning of individual jurors in private in order to respect the privacy of jurors. The court overturned convictions in each case. The Supreme Court also ruled in *In re Personal Restraint of Coggin*, 182 Wn.2d 115, 340 P.3d 810 (2014) and *In re Personal Restraint of Speight*, 182 Wn.2d 103, 340 P.3d 207 (2014), that the respective trial courts violated the accused's public trial right when questioning jurors in chambers.

Most recently, in *State v. Russell*, No. 85996-5, slip op. 12 (Aug. 20, 2015), our Supreme Court reaffirmed that peremptory and for-cause challenges are qualitatively different from hardship and administrative excusals of jurors, as the former likely

18

implicate the public trial right, while the latter do not. As such, the high court held that David Russell was not denied his right to a public trial after the trial court conducted an in-chambers work session at which Russell, his attorney, and the prosecutor reviewed hardship questionnaires that had been completed by jurors. No jurors were questioned in chambers.

Dallin Fort's trial court closed voir dire without considering the five *Bone-Club* factors on the record. Thus we hold that the trial court violated Fort's and the public's right to the open administration of justice.

### Waiver

The State of Washington argues that Dallin Fort, during trial, waived his public trial rights such that he cannot assert them on appeal. According to the State, Fort waived the rights by not asserting them at the time of private questioning in chambers. We disagree.

Waiver requires the intentional relinquishment or abandonment of a known right or privilege. *State v. Frawley*, 181 Wn. 2d at 461 (2014). Courts indulge every reasonable presumption against waiver of fundamental rights. *Glasser v. United States*, 315 U.S. 60, 70, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207, 691 P.2d 957 (1984). The prosecution bears the burden of establishing a valid waiver. *State v. Frawley*, 181 Wn.2d at 461; *State v. Wicke*, 91 Wn.2d 638, 645, 591 P.2d 452 (1979).

19

In a fractured opinion, our Supreme Court addressed the waivability of public trial rights in its *Frawley* ruling. Justice Charles Johnson, joined by Justice Owens, wrote the lead opinion, which demands a written waiver of a defendant's public trial rights. *Frawley*, 181 Wn.2d at 462. Justices Stephens and Fairhurst did not consider a lack of objection alone grounds for waiver. *Frawley*, 181 Wn.2d at 469 (Stephens, J., concurring). Justices McCloud, James Johnson, and González likely would require acknowledgement on the record that a defendant discussed his public trial rights with defense counsel or the judge in order for the waiver to be knowing and enforceable. *Frawley*, 181 Wn.2d at 475-76 (Gordon McCloud, J., dissenting in part).

Dallin Fort did not waive his public trial rights in writing. The record shows no discussion between Fort, on the one hand, and his counsel or the trial court, on the other hand, about public trial rights. Fort expressly waived his right to be present for the chambers interviews. But Fort did not waive his public trial rights. In *State v. Frawley* and *In re Personal Restraint of Morris*, 176 Wn.2d 157 (2012), the state Supreme Court rejected the State's arguments that an accused's waiver of the right to be present during private questioning of potential jurors constituted a waiver of the right to questioning of jurors in open court.

### Invited Error

The State of Washington also contends that Dallin Fort invited the error inherent in the violation of his public trial right. We again disagree.

20

The basic premise of the invited error doctrine is that a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial. *State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009). The doctrine prevents parties from receiving a windfall by misleading trial courts. *Momah*, 167 Wn.2d at 153. In deciding whether a party invites a court closure, a court considers whether the defendant or defense counsel affirmatively advocated for closure, or for the expansion of the closure, and benefited from the closure. *Momah*, 167 Wn.2d at 155.

In *In re Personal Restraint of Coggin*, 182 Wn.2d 115 (2014), defense counsel expressed a desire for individual juror questioning due to the publicity and sensitive nature of the case. Nevertheless, the *Coggin* court concluded that Coggin's actions did not rise to the level of invited error when he assented to the State's juror questionnaire and the trial judge decided to question jurors in chambers.

Dallin Fort benefited from the closure because private questioning resulted in the exclusion of jurors with potential bias. Nevertheless, the record shows no advocacy by Fort for the closure or its expansion. Dallin Fort recognized that his absence from juror questioning could encourage forthright answers from potential jurors. But Fort could have absented himself from voir dire held in open court. The record does not show that Fort designed or authored the jury questionnaire, but the record establishes that the trial court organized and executed the closure. Fort participated in the error, but he did not invite it.

21

*Direct Review*

We have established that the questioning of jurors in private breached Dallin Fort's public trial rights. We must now determine whether Fort may assert these rights in this late stage of his litigation.

Dallin Fort seeks a new trial, because of infringement of his constitutional right to an open trial, through two avenues: (1) his second appeal, and (2) a personal restraint petition. An appeal is also called direct review, and a personal restraint petition is known as a collateral attack or a collateral review.

Dallin Fort first asserted his public trial rights after one appeal and during a remand to the trial court for resentencing. He did not assert violation of his open courtroom rights only after filing this second appeal. Instead, he earlier raised this contention before the trial court. The trial court refused to consider the issue on remand. We ask whether an accused may assert the violation of his constitutional rights as grounds for a new trial on a remand from the Court of Appeals for resentencing, when the accused failed to assign error to the violation of his rights during his first appeal or to challenge the breach of his rights during the first trial.

We gather from a Washington decision and foreign decisions the principle that one cannot raise an issue for the first time on a remand from a reviewing court. Washington courts do not permit a party to ignore an issue on the first appeal only to raise the issue on remand when it becomes apparent the initially ignored issue is critical to the party's case.

22

*State v. Ramos*, 163 Wn.2d 654, 663, 184 P.3d 1256 (2008). An issue argued for the first time only after remand is too late. *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 685 (7th Cir. 2008). Any issue that could have been but was not raised on appeal is waived on a remand. *United States v. Schroeder*, 536 F.3d 746, 751 (7th Cir. 2008); *United States v. Husband*, 312 F.3d 247, 250-51 (7th Cir. 2002). Parties cannot use the accident of remand as an opportunity to reopen waived issues. *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 891 (7th Cir. 2013); *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001). Under Michigan law, the doctrine of res judicata bars a party from raising an issue for the first time on remand that it could have raised before. *South Macomb Disposal Auth. v. American Ins. Co.*, 243 Mich. App. 647, 653, 625 N.W.2d 40 (2000). The rule prohibiting raising an issue for the first time on remand should apply with added vigor when the appeals court remanded for resentencing only and the new issue does not impact sentencing.

Dallin Fort skirts the rule that he cannot assert a legal contention for the first time on remand by arguing this court's decision in *State v. Frawley*, 140 Wn. App. 173, 167 P.3d 593 (2007), *aff'd*, 181 Wn.2d 452, 334 P.3d 1022 (2014), should be applied retroactively to his prosecution. This division affirmed Dallin Fort's convictions, during his first appeal, on September 4, 2007. Nine days later, this division issued its decision in *State v. Frawley*, in which we reversed and remanded a criminal prosecution for a new trial because the trial court closed voir dire without weighing the *Bone-Club* factors on

the record. The *Frawley* facts are parallel. On December 4, 2007, this court mandated Fort's case to the trial court for resentencing, because of error in the trial court's original sentencing.

Dallin Fort argues that the *Frawley* decision created a new rule of law. He then contends that the new rule applies retroactively to cases pending on direct review or not yet final. Finally, Fort argues that, since this court issued its mandate to the superior court after issuance of the *Frawley* ruling, the trial court should have applied the *Frawley* rule and granted a new trial. The trial court found the *Frawley* decision to create new law but then, contrary to precedence, refused to apply the new rule in favor of Fort. We agree with Fort that his first appeal was not final when we issued *Frawley*, but we disagree with Fort and the trial court that *Frawley* created a new rule of law.

A new rule of criminal procedure applies retroactively to all cases pending on direct review or not yet final. *In re Pers. Restraint of Haghighi*, 178 Wn.2d 435, 443, 309 P.3d 459 (2013); *State v. Kilgore*, 167 Wn.2d 28, 35, 216 P.3d 393 (2009). Retro application of a decision involves at least two elements. First, the case, to which the fresh ruling is sought to be applied, must not be "final." *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989); *State v. Kilgore*, 167 Wn.2d at 35. Second, the ruling must compose a new decisional rule. *Haghighi*, 178 Wn.2d at 443.

Concerning the first element, we define finality as the point at which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a

24

petition for certiorari elapsed or a petition for certiorari finally denied. *Kilgore*, 167 Wn.2d at 35-36. RAP 12.7 defines the finality of a decision by an appellate court. Finality is the point at which the appellate court loses the power to change its decision. RAP 12.7(a), (b). This occurs when the appellate court issues its mandate or when the Court of Appeals issues a certificate of finality. *State v. Kilgore*, 167 Wn.2d at 38. We need not decide if the resentencing precluded finality, since this court issued Dallin Fort's mandate after issuance of *Frawley*. The mandate alone precludes earlier finality. *In re Pers. Restraint of Eastmond*, 173 Wn.2d 632, 639, 272 P.3d 188 (2012). Thus, if *Frawley* created a new rule, Dallin Fort was entitled to retrospective application of *Frawley*.

The question of whether an appeals court decision constructs a new rule of law is an esoteric inquiry compelling an implicit and theoretical measurement of the distance between, on the one hand, a court's recent decision and, on the other hand, precedence, if any, leading to the recent court decision. In this appeal, we must address whether *Frawley*'s rule, that the trial court may not, without a *Bone-Club* analysis, conduct a portion of voir dire in chambers to protect juror privacy, is, on the one hand, inches or feet, or on the other hand, miles from prior decisional law establishing public trial rights. We conclude that *Frawley* is a natural, logical, tight, and diminutive extension of precedence such that it did not create new law in the sense needed for retroactive application of a decision.

25

A rule is "new" if it breaks new ground or if the result was not dictated by precedent existing at the time the defendant's conviction became final. *Teague v. Lane*, 489 U.S. at 301 (1989); *In re Pers. Restraint of Eastmond*, 173 Wn.2d at 639 (2012). If before the opinion is announced, reasonable jurists could disagree on the rule of law, the rule is new. *Eastmond*, 173 Wn.2d at 639-40; *State v. Evans*, 154 Wn.2d 438, 444, 114 P.3d 627 (2005). For purposes of a personal restraint petition, the test of whether a decision constitutes a significant, material change in the law under RCW 10.73.100(6) is to determine whether the defendant could have argued the issue before publication of the new decision. *State v. Gomez Cervantes*, 169 Wn. App. 428, 433, 282 P.3d 98 (2012).

The Washington Supreme Court decided *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30 in 1982. *Ishikawa* directed trial courts not to close court proceedings without first weighing five factors that later became the *Bone-Club* factors. *Ishikawa* involved a closure in a criminal case. *Ishikawa* entailed shutting of the courtroom during the accused's motion to dismiss, but the opinion did not limit its application to any particular portion of a trial or hearing. Thirteen years later, in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995), our state high court formally adopted the five step review demanded before closure of the courtroom.

*State v. Bone-Club* may be the least read or most ignored Supreme Court decision in Washington State history. Or the decision may be both the least studied and most discounted opinion in state chronicles.

26

The teaching of *Bone-Club* is straightforward. If the trial court chooses to close the courtroom during the trial or exclude the public from a proceeding, the court must first weigh on the record the five *Bone-Club* criteria. Contrary to popular belief, *Bone-Club* does not prevent closures. Closing the courtroom is lawful and constitutionally permissible as long as the trial court considers and evaluates the quintuplet factors. Weighing the factors on the record should consume little time. Trial courts otherwise weigh competing factors, during the course of a trial, such as with an ER 404(b) analysis and with decisions permitting child testimony. Trial courts and trial attorneys should have known by the mid-1990s of the need to apply the *Bone-Club* factors before closing the court to the public.

In 2004, the Supreme Court explicitly applied *Bone-Club* to jury selection in *In re Personal Restraint of Orange*, 152 Wn.2d 795 (2004). Although *Orange* involved the complete closing of the courtroom to the public during the entire voir dire, nothing in *Orange*, or earlier in *Bone-Club*, suggested the court need not weigh the five factors before partial closing of voir dire.

The trial court below emphasized chambers questioning of jurors to protect a few juror's privacy. The trial court expressed surprise that *Bone-Club* would not permit a closure for this purpose. Nevertheless, factors listed in the *Bone-Club* analysis would warn a trial court that the analysis must be applied when seeking to protect a juror's privacy. One element of the analysis demands that the proponent of closure make some

27

showing of a need. Juror privacy could be this need. Thus, the trial court should weigh privacy rights with the need for open hearings.

By January 2006, the law was sufficiently certain for the trial court to know to either question jurors in the open or weigh the *Bone-Club* elements before closing the court. The law was sufficiently clear for Dallin Fort's appellate counsel to raise the issue during the first appeal. Our 2007 ruling in *Frawley* announced no startling rule. The ruling was consistent with twenty years of Washington precedence.

Our conclusion is bolstered by the state Supreme Court's recent decision in *In the Matter of Personal Restraint of Erhart*, 183 Wn.2d 144, 351 P.3d 137 (2015). During Toby Erhart's trial, the trial court interviewed several prospective jurors privately in chambers without conducting the *Bone-Club* analysis. Erhart did not raise a public trial issue during his 2008 appeal. He filed a personal restraint petition two years after his criminal conviction became final. He argued that his collateral attack avoided the one-year collateral attack time bar because either the Court of Appeals' or the Supreme Court's decision in *State v. Wise*, 148 Wn. App. 425, 200 P.3d 266 (2009), *rev'd*, 176 Wn.2d 1, 288 P.3d 1113 (2012) significantly changed the law and was thus retroactive to his case. The Supreme Court disagreed. The Supreme Court stated that its *Wise* decision was firmly grounded in its prior precedent concerning the public trial right with regard to jury selection. Erhart could have relied on both *In re Personal Restraint of Orange* (2004) or *State v. Bone-Club* (1995) to have asserted, during his trial or 2008 direct

28

appeal, an error in jury selection closure.

Our conclusion is also bolstered by *In re Personal Restraint of Morris*, 176 Wn.2d 157 (2012). The Supreme Court observed that Patrick Morris' counsel should have known, during Morris' direct appeal in 2005, to challenge the trial court's closure of voir dire. Both *Bone-Club* and *Orange* had been decided by 2005.

Dallin Fort may argue that this court's mandate to the superior court for resentencing did not terminate direct review and thus he may now assert his public trial rights as an issue of constitutional magnitude in this second appeal regardless of his forwarding the argument before the trial court during the sentencing remand. The general rule is that a defendant is prohibited from raising issues on a second appeal that were or could have been raised on the first appeal. RAP 2.5(c); *State v. Sauve*, 100 Wn.2d 84, 87, 666 P.2d 894 (1983); *State v. Mandanas*, 163 Wn. App. 712, 716, 262 P.3d 522 (2011). This rule applies even when the issue is one of constitutional magnitude. *State v. Sauve*, 100 Wn.2d at 87. The proper vehicle for new issues is a personal restraint petition. *Sauve*, 100 Wn.2d at 87.

Mature rules apply to cases on direct review. *Whorton v. Bockting*, 549 U.S. 406, 416, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007); *In re Personal Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 100, 351 P.3d 138 (2015). Since the *Frawley* decision constitutes an old rule, the rule should have been asserted during the first, not second, appeal by Dallin Fort. The law encourages resolution of appealable issues during the first appeal. *State v.*

29

*Barberio*, 121 Wn.2d 48, 52, 846 P.2d 519 (1993).

RAP 2.5(c)(1) addresses review of trial court decisions for the first time during a second appeal. The rule reads:

> (1) *Prior Trial Court Action.* If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case.

The rule has no application here since Dallin Fort did not assign error to trial court closure during the first proceeding before the trial court.

### Ineffective Assistance of Counsel

Dallin Fort seeks redress, in his personal restraint petition, of two constitutional rights: his public trial right and his right to effective assistance of counsel. We already held that the court closure violated Fort's public trial right. Before addressing whether we should grant Fort a new trial in his personal restraint petition, we ask whether Fort's appellate counsel's failure to assert the violation of his constitutional public trial right during the first appeal constituted ineffective assistance of counsel. We conclude Fort was subjected to ineffective assistance of counsel.

*In re Personal Restraint of Orange*, 152 Wn.2d 795 (2004) controls this question. Christopher Orange sought relief in a personal restraint petition. Orange argued that his earlier appeals counsel's failure to allege error relating to the exclusion of the public from jury selection signified ineffective assistance of counsel. To establish ineffective

assistance of counsel, the criminal defendant must show his attorney performed deficiently and the deficient performance caused prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The *Orange* court held that a public trial error is presumptively prejudicial, so that appellant's counsel's failure to raise the issue on appeal was both deficient and prejudicial. The failure was not the product of strategic or tactical thinking and it deprived Orange of the opportunity to have the constitutional error deemed per se prejudicial on his direct appeal. The remedy for the failure was a remand for a new trial.

The Supreme Court affirmed the *Orange* holding in *In re Personal Restraint of Morris*, 176 Wn.2d at 166 (2012). Morris' counsel should have known in 2005 to raise the public trial right based solely on *Bone-Club* and *Orange.* *Orange* had been decided before Morris' appeal and *Orange* declared, without qualification, that *Bone-Club* applied to jury selection. The Supreme Court granted Morris a new trial as a result of questioning of jurors in private without the *Bone-Club* analysis.

*Personal Restraint Petition*

We declined Dallin Fort relief through his second appeal. Therefore, we now address whether he may receive a new trial by advancing his public trial rights or his effective assistance of counsel privileges by his personal restraint petition. We hold that, in the context of this petition, Fort is entitled to a new trial. He does not succeed by asserting his public trial rights in his initial personal restraint petition filing. He succeeds

31

by contending in his supplemental brief that his counsel in his first appeal was ineffective. The latter contention is timely since Fort filed the supplemental brief before his conviction became final.

Washington's personal restraint petition procedure supersedes the former appellate procedure of habeas corpus. RAP 16.3(b). An incarcerated person typically files a personal restraint petition after exhausting appeal rights. The rules, however, do not preclude the defendant from filing a personal restraint petition during the pendency of an appeal. RAP 16.3 to RAP 16.15 govern personal restraint petitions in noncapital cases.

This court will grant relief to a petitioner if he or she is under a "restraint" and the petitioner's restraint is unlawful for one or more of the reasons defined in RAP 16.4(c). RAP 16.4(a). Those reasons include:

> (2) The conviction was obtained . . . in violation of the Constitution of the United States or the Constitution or laws of the State of Washington; or
>
>  . . . .
>
> (4) There has been a significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government, and sufficient reasons exist to require retroactive application of the changed legal standard; or
> (5) Other grounds exist for a collateral attack upon a judgment in a criminal proceeding or civil proceeding instituted by the state or local government; or
>
>  . . . .
>
> (7) Other grounds exist to challenge the legality of the restraint of petitioner.

RAP 16.4(c). We previously concluded that the State obtained convictions of Dallin Fort

while violating both the federal and the state constitutional provisions ensuring an open courtroom and entitling a criminal defendant to effective assistance of counsel.

Failure to conduct a *Bone-Club* analysis before closing voir dire is error generally requiring a new trial because questioning of the venire is an inseparable part of trial. *Coggin*, 182 Wn.2d at 118. This general rule does not always apply in a personal restraint petition. Instead, whether the petitioner prevails can depend on whether he alleges a violation of his open courtroom rights or his right to effective assistance of counsel. Dallin Fort raises both contentions.

A personal restraint petition does not substitute for a direct appeal, and different procedural rules implement the two procedures' divergence. *Coggin*, 182 Wn.2d at 120. Washington courts limit the availability of collateral relief because it undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders. *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 329, 823 P.2d 492 (1992). Primarily, the appellate process exists to remedy trial errors even when constitutionally based. *Coggin*, 182 Wn.2d at 122. The appellate process exists to develop the body of law governing all cases. *Coggin*, 182 Wn.2d at 122. Collateral review focuses on the facts of the individual case, and its purpose is to correct the most egregious errors that cause actual harm. *Coggin*, 182 Wn.2d at 122.

A petitioner who collaterally attacks his conviction must satisfy a higher burden

than an appellant on direct review. *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 596-97, 316 P.3d 1007 (2014). Whereas a presumption of prejudice is appropriate for direct review in some cases, that presumption may not be proper for collateral review. *Stockwell*, 179 Wn.2d at 596-97. Even in those cases when the error would never be harmless on direct review, our Supreme Court has not adopted a categorical rule that would equate per se prejudice on collateral review with per se prejudice on direct review. *In re Coggin*, 182 Wn.2d at 120. Instead, generally, for a petitioner to prevail in a personal restraint petition, the petitioner must establish by a preponderance of the evidence that the constitutional error worked to his actual and substantial prejudice. *In re Pers. Restraint of Speight*, 182 Wn.2d at 107 (2014); *Coggin*, 182 Wn.2d at 116. Importantly for Dallin Fort's petition, this rule of actual and substantial prejudice applies to assertions of public trial rights for the first time in a collateral attack. *Speight*, 182 Wn.2d at 107; *Coggin*, 182 Wn.2d at 116.

An anomaly exists with respect to prevailing in a personal restraint petition when one encountered an infringement on open trial rights. On the one hand, when the petitioner asserts his or her public trial rights directly, the petitioner must show actual prejudice. *Coggin*, 182 Wn.2d at 116; *In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 181, 248 P.3d 576 (2011). No presumption of prejudice arises. *Coggin*, 182 Wn.2d at 120. On the other hand, when the petitioner asserts his or her public trial rights indirectly, by arguing counsel engaged in ineffective assistance by not asserting his or her

34

public trial rights during an appeal, petitioner need not prove actual prejudice. *In re Pers. Restraint of Morris*, 176 Wn.2d at 166 (2012); *Coggin*, 182 Wn.2d at 119. Instead, the general rule that prejudice is presumed prevails. *Morris*, 176 Wn.2d at 166; *Coggin*, 182 Wn.2d at 119. Had the accused's appellate counsel raised this issue on direct appeal, the accused would have received a new trial. *Morris*, 176 Wn.2d at 166; *Coggin*, 182 Wn.2d at 119. According to the Supreme Court, under such circumstances, no clearer prejudice could be established. *Morris*, 176 Wn.2d at 166; *Coggin*, 182 Wn.2d at 119.

This anomaly should be criticized. Open courts is a constitutional demand of the highest priority. The right to effective assistance of counsel, although important, does not hold as much importance as public trials. As Justice Stephens wrote, in a dissent in *Coggin*, the right to effective assistance of counsel has never been deemed deserving of greater protection than the right to a public trial. 182 Wn.2d at 131 n.5 (Stephens, J., dissenting). To the contrary, since the violation of a public trial right is considered structural error and not subject to a harmless error analysis, the right to a public trial should receive priority in a personal restraint petition.

The outcome of a personal restraint petition should not depend on whether the petitioner uses the enchanted words "ineffective assistance of counsel" as opposed to the mundane phrase "public trial right." One may not do indirectly what the law prohibits one from doing directly. *Smith v. Orthopedics Int'l., Ltd., PS*, 170 Wn.2d 659, 668-69, 244 P.3d 939 (2010); *State v. Demery*, 144 Wn.2d 753, 773 n.9, 30 P.3d 1278 (2001).

35

This principle shows that performing an act indirectly is the same as performing an act directly. The converse should be true. The law should treat one as taking a necessary step indirectly what one otherwise does directly. If one directly asserts, in a personal restraint petition, that his public trial rights were violated during a criminal trial or appeal, the law should assume he also indirectly asserts his open court rights through his right to effective assistance of counsel. Otherwise, the law penalizes one who directly asserts a right, rather than raises the privilege indirectly. A failure to raise the issue indirectly would be ineffectiveness compounded on earlier ineffectiveness.

The Washington Supreme Court, in *Coggin* and *Speight*, addressed the question of whether a petitioner must show actual prejudice when he asserts a violation of his public trial rights through a personal restraint petition. In each case, the trial court questioned jurors in judge's chambers, but the defendant failed to raise the violation of his public trial rights on direct appeal. Each defendant sought to raise his respective constitutional rights by personal restraint petition. Because neither defendant showed prejudice by the court closure, each defendant's conviction was affirmed.

In *Coggin*, the lead case, the state high court noted that, while a defendant's public trial rights are implicated by in-chambers voir dire, prejudice is not conclusive, nor can it be presumed on collateral review. Prejudice is not conclusive because a limited trial closure could be justified if the trial court closes the courtroom after applying the *Bone–Club* factors. Although some errors which result in per se prejudice on direct review will

36

also be per se prejudicial on collateral attack, the interests of finality of litigation demand that a higher standard be satisfied in a collateral proceeding. *Coggin*, 182 Wn.2d at 122. The principles of finality outweigh any public trial rights when the petitioner raises the public trial right issue for the first time on collateral review. *Coggin*, 182 Wn.2d at 122. Why the principles of finality outweigh public trial rights, but not effective assistance of counsel, on collateral review is inexplicable.

In *Coggin*, the State charged William Coggin with rape. The trial judge and the parties were concerned with juror impartiality because the case had received significant news coverage. According to the Supreme Court, private questioning in chambers likely worked to benefit Coggin by protecting his right to a fair trial by an impartial jury.

Justice Stephens dissented in *Coggin*, 182 Wn.2d at 126. Justice Stephens noted the critical importance of open trials to our democratic society. The jury selection process, as an indispensable component of a criminal trial, should remain open to public viewing. According to the dissent, courts should protect the public trial right by considering an uninvited, unwaived violation as always prejudicial. An infringement of the public trial right is a structural error and harmless error analysis does not apply to a structural error. *Coggin*, 182 Wn.2d at 126-28 (Stephens, J., dissenting). Since courts cannot gauge the prejudice of an unjustified courtroom closure, prejudice must necessarily be implied. While the cost of a retrial is high in terms of a financial burden on a county and the emotional impact on a victim and witnesses, a single public trial right

violation is worth the cost of a second trial. Justice Stephens addressed the majority's conclusion that closure of voir dire in William Coggin's trial led to a fairer trial, by noting an absence of evidence regarding the effect of the closed voir dire. She also questioned the validity of the assumption that a closed voir dire ensures fair trials, when the United States Supreme Court, in *Press-Enterprise Co. v. Superior Court of CA*, 464 U.S. at 503 (1984), rejected the State's argument that voir dire benefited the defendant in a rape and murder trial because juror responses were more candid with the press absent. The United States Supreme Court rejected the argument that openness is necessarily opposed to fairness. Justice Stephens' dissent in *Coggin* also extended to a dissent in *Speight*.

In Dallin Fort's case, the closure may have operated to the detriment of Dallin Fort's father, who declared he would have objected to the closure. Dallin Fort, however, under the reasoning of *Coggin*, cannot show that the closure worked to his actual and substantial prejudice. Fort's chances of obtaining an impartial jury increased with the temporary closure of the courtroom. Thus, we reject Fort's request, in his personal restraint petition, for a new trial because his trial violated his right to an open courtroom and public jury selection.

We move to Dallin Fort's argument, in his personal restraint petition, that he experienced ineffective assistance of counsel. In April 2015, Dallin Fort argued for the first time that appellate counsel for his first direct appeal was ineffective for not asserting

38

a public trial violation. We must now ask whether Fort must show actual and substantial

prejudice, within his personal restraint petition, for success in arguing ineffective

assistance of counsel.

We already answered this question. *In re Personal Restraint of Orange*, 152

Wn.2d 795 (2004) and *In re Personal Restraint of Morris*, 176 Wn.2d 157 (2012) control.

In each decision, the Supreme Court granted the personal restraint petitioner a new trial

on the basis that his appellate counsel was ineffective when failing to assert his public

trial rights during the direct appeal. The *Orange* court held that a public trial error is

presumptively prejudicial, even in the confines of a personal restraint petition, so that

appellant's counsel failure to raise the issue on appeal was both deficient and prejudicial.

The Supreme Court affirmed the *Orange* holding in *In re Personal Restraint of Morris*,

176 Wn.2d 157, 288 P.3d 1140 (2012).

*Timeliness of Ineffective Assistance of Counsel Allegation*

Dallin Fort filed a supplemental brief appending his ineffective assistance of

counsel argument to his original public trial right allegation. Fort has not formally

amended his petition to add the ineffective assistance of counsel allegation. We

determine to consider the supplemental brief as an amendment anyway.

The Rules of Appellate Procedure (RAPs) govern personal restraint petitions. *In

re Personal Restraint Petition of Haghighi*, 178 Wn.2d at 446 (2013). The RAPs neither

authorize nor prohibit amendments to personal restraint petitions. *Haghighi*, 178 Wn.2d

39

at 446. Washington courts, however, allow an amendment provided the amendment is timely asserted. *Haghighi*, 178 Wn.2d at 446; *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 140, 196 P.3d 672 (2008). Washington law bars the amendment from relating back to the time of the filing of the personal restraint petition for purposes of complying with the one-year time limit. *Haghighi*, 178 Wn.2d at 446; *In re Pers. Restraint of Bonds*, 165 Wn.2d at 140.

Since the RAPs do not formally authorize an amendment, it follows that the rules do not prescribe the format for an amendment or require that any pleading be labeled as an "amendment." RAP 1.2(a) directs us to "liberally" interpret the appellate rules to "promote justice and facilitate the decision of cases on the merits." RAP 16.17 applies RAP 1.2 to a personal restraint petition. Thus, we consider Dallin Fort's April 2015 supplement brief an amendment expressly asserting ineffective assistance of counsel. We must now determine whether Fort timely filed his amendment.

RCW 10.73.090 imposes a one-year limitation period upon the filing of a personal restraint petition. The one-year time bar stands as a formidable obstacle to many late-recognized claims. *Coggin*, 182 Wn.2d at 135 (2014) (Stephens, J., dissenting). The one-year commences when the petitioner's judgment becomes "final." *In re Pers. Restraint of Skylstad*, 160 Wn.2d 944, 947, 162 P.3d 413 (2007). The statute reads:

(1) No petition or motion for collateral attack on a judgment and

40

sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.

(2) For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. "Collateral attack" includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion for a new trial, and a motion to arrest judgment.

(3) For the purposes of this section, a judgment becomes final on the last of the following dates:

(a) The date it is filed with the clerk of the trial court;

(b) The date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction; or

(c) The date that the United States Supreme Court denies a timely petition for certiorari to review a decision affirming the conviction on direct appeal. The filing of a motion to reconsider denial of certiorari does not prevent a judgment from becoming final.

RCW 10.73.100 lists six exceptions to the one-year limitation, none of which apply to Dallin Fort's petition. We must determine when Dallin Fort's judgment became final. We conclude it is not yet final.

Dallin Fort's case carries a long history. The jury convicted Dallin Fort of two counts in February 2006, and the trial court sentenced Fort in April 2006. Fort timely appealed. In September 2007, this reviewing court upheld both convictions but remanded for sentencing. In December 2007, this appeals court issued its mandate to the superior court. In January 2008, the trial court resentenced Dallin Fort to a lower number of months than the original sentence. Fort again appealed to this court and the second appeal remains pending.

In the meantime, Dallin Fort filed his personal restraint petition in June 2007, in

41

which he solely argued that his public trial rights were violated. Before this court entertained the petition and, in April 2015, Fort filed a supplemental brief arguing ineffective assistance of counsel from his first appeal counsel by a failure to argue the violation of his public trial right.

Two Washington decisions vie for primacy in our determination of whether Dallin Fort asserted ineffective assistance of counsel within one year of his conviction being final: *State v. Kilgore*, 167 Wn.2d 28 (2009) and *In re Personal Restraint of Skylstad*, 160 Wn.2d 944 (2007). In *State v. Kilgore*, the Supreme Court ruled a judgment to be final, for purposes of retroactivity analysis, upon the issuance of its mandate, despite a remand to the trial court. The Court of Appeals reversed two of Mark Kilgore's convictions, but affirmed five other convictions. The Court of Appeals remanded for further proceedings, which could have included retrial of the two reversed counts. Kilgore did not challenge his sentence on appeal. The Supreme Court accepted review, affirmed the Court of Appeals, and mandated the case to the superior court for further proceedings consistent with the high court's opinion.

On remand, in *State v. Kilgore*, the State declined to retry Mark Kilgore on the two reversed convictions. The mandate did not authorize the trial court to resentence Kilgore. Therefore, the superior court declined Kilgore's motion for resentencing and instead corrected the original judgment and sentence to reflect the reversals. The superior court also ruled that the terms and conditions of the original judgment and sentence remained

42

in full force and effect. As a result, the superior court also denied Kilgore's request to apply retroactively the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) on the theory that the correction of the sentence did not destroy the judgment's earlier finality.

On appeal for the second time, the Supreme Court, in *State v. Kilgore*, confirmed the trial court's denial of retrospective application of *Blakely*. The Supreme Court reasoned that Kilgore's judgment was final on its original remand because the superior court exercised no discretion when correcting the judgment and sentence. The Supreme Court distinguished *In re Personal Restraint of Skylstad* on the basis that the *Skylstad* trial court exercised independent judgment, on remand, by imposing a new judgment and sentence. *Kilgore*, 167 Wn.2d at 36 n.5.

In our second decision, *In re Personal Restraint of Skylstad*, 160 Wn.2d 944 (2007), the state Supreme Court addressed whether a judgment is final if a defendant's sentence is still under appeal. Scott Skylstad filed a personal restraint petition during the second of two direct appeals, more than one year after his conviction but while his sentence was on appeal. The Court of Appeals held that Skylstad's personal restraint petition was time barred. The Supreme Court reversed and remanded to the Court of Appeals to determine the merits of Skylstad's petition.

The *Skylstad* court held that Skylstad's judgment was not final because his sentence was still being appealed. A jury convicted Skylstad of first degree robbery with

43

a firearm enhancement on February 8, 2002. On October 7, 2003, the Court of Appeals affirmed the conviction, but reversed the sentence. The Supreme Court denied review and the Court of Appeals issued its mandate on May 14, 2004. The trial court resentenced Skylstad on July 28, 2004, and Skylstad appealed again. On October 11, 2005, the Court of Appeals affirmed Skylstad's sentence. On November 21, 2005, during the pendency of his second appeal, Skylstad filed his personal restraint petition. On September 6, 2006, the Supreme Court denied review of the opinion in the second direct appeal. On September 15, 2006, the Court of Appeals issued a final mandate in the case.

The Supreme Court, in *Skylstad*, held that, in a criminal proceeding, a final judgment ends the litigation, leaving nothing for the court to do but execute the judgment. 160 Wn.2d at 949. Upon the first mandate issued by the Court of Appeals, more steps needed to be performed than simply execute the judgment. The superior court still had to determine Skylstad's new sentence. Upon a sentence being reversed, the finality of a judgment is destroyed. In a criminal case, the sentence constitutes the judgment against the accused, and, hence, there can be no judgment against the defendant until pronouncement of sentence. Litigation on the merits continued and Skylstad's judgment could not be final until his sentence was final. "[U]nlike Kilgore, Skylstad's sentence was reversed on appeal and his case remanded for resentencing. Until the trial court exercised its independent judgment by imposing a new judgment and sentence, Skylstad had no sentence." *Kilgore*, 167 Wn.2d at 36 n.5 (citation omitted). Because the second

44

appeal was still pending, no final judgment was entered and the one-year limitation had not yet begun.

Dallin Fort's recent amendment in his personal restraint petition aligns more with the fact pattern in *Skylstad* than in *Kilgore*. When this reviewing court remanded the case in 2007 for resentencing, the trial court exercised its discretion when imposing the new sentence, rather than merely effecting a clerical change. Until the trial court exercised that discretion, Fort had no sentence. The trial court imposed a lesser sentence. Fort timely appealed the trial court a second time and the appeal still lies within this court. Following the lower court's exercise of discretion, we are yet to issue a mandate. Dallin Fort's amendment of his personal restraint petition precedes finality and is thus timely.

We should also mention two other decisions, which contrast with Dallin Fort's personal restraint petition. In *In re Personal Restraint of Copland*, 176 Wn. App. 432, 441, 309 P.3d 626 (2013), *review denied*, 182 Wn.2d 1009, 343 P.3d 760 (2015), we rejected Walter Copland's request, in his supplemental personal restraint petition brief, to address an ineffective assistance of counsel allegation. In *In re Personal Restraint Petition of Haghighi*, 178 Wn.2d 435 (2013), the Supreme Court rejected Nadder Haghighi's amended personal restraint petition raising an ineffective assistance of counsel theory. In each case, the petitioner filed his personal restraint petition within one year of finality of his criminal judgment, but failed to raise the ineffective assistance of counsel argument until one year after finality of judgment.

Once again, Dallin Fort raises his ineffective assistance of counsel theory within one year of finality, since his judgment is not yet final. Because Fort's claim of ineffective assistance is timely, we presume prejudice.

*Stay of Judgment and Sentence*

Dallin Fort assigns error to the trial court's refusal to stay enforcement of his judgment and sentence pending appellate review. Since we vacate Dallin Fort's judgment and sentence, this assignment of error is moot.

## CONCLUSION

We grant Dallin Fort his personal restraint petition. We vacate his 2005 judgment and sentence and remand to direct that the trial court conduct a new trial.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J. (in result only)

_____
Lawrence-Berrey, J.

46

Appendix

State v. Dallin Fort
Chronology

November 10, 2005 State filed charges against Fort.

January 30, 2006    Trial began.  During voir dire, trial court interviews potential jurors in closed chambers.

February 3, 2006    Jury convicted Fort.

April 3, 2006    Trial court sentenced Fort to a minimum of 132 months.

April 21, 2006    Fort appealed to this court.

October 24, 2006    Fort filed the brief for his first direct appeal.  Fort did not claim a violation of his public trial rights during this first appeal.

December 15, 2006  Trial court ordered voir dire and opening statements from Dallin Fort's trial to be transcribed at public expense.

June 12, 2006    Fort filed a personal restraint petition, in which he argued that the trial court violated his and the public's right to the open administration of justice.

September 4, 2007  In an unpublished opinion, this court affirmed Dallin Fort's convictions, but reversed the sentence and remanded for resentencing.  This court held that the trial court erred in failing to count Fort's two convictions as the same criminal conduct.

September 13, 2007 This court published its decision in *State v. Frawley*, in which we reversed and remanded a criminal prosecution for a new trial because the trial court closed voir dire without weighing the *Bone-Club* factors on the record.

December 4, 2007  This court mandated Dallin Fort's case to the trial court for resentencing.

January 3, 2008    Fort moved the trial court to grant him a new trial or vacate his judgment and sentence based on this court's decisions in *State v. Frawley*.

January 14, 2008    This court stayed its consideration of Dallin Fort's personal restraint petition pending our Supreme Court's decision on whether to accept review in *Frawley.*

January 25, 2008    The trial court held a hearing to resentence Fort according to this court's September 4, 2007 decision and December 4, 2007 mandate. Before resentencing, the trial court heard argument on Fort's motion for a new trial because of a violation of public trial rights. The trial court refused to apply this court's ruling in *Frawley* retroactively and denied Fort's motion. The trial court resentenced Fort to a minimum of 108 months confinement with a maximum term of life.

February 5, 2008    Dallin Fort filed his second notice of appeal.

March 19, 2008    Dallin Fort filed his opening brief for his second direct appeal. Fort assigned error to the trial court's denial, at resentencing, of his motion for a new trial because of a violation of his public trial right.

July 8, 2008    This court stayed Dallin Fort's second direct appeal because of pending Supreme Court decisions.

February 26, 2013    This court lifted its stay of Fort's second direct appeal. We directed the parties to provide supplemental briefing.

April 8, 2013    The Supreme Court granted review of this court decision in *Frawley.*

April 26, 2013    This court scheduled Fort's second direct appeal for consideration on June 12, 2013 without oral argument.

May 3, 2013    This court reinstituted its stay of Fort's second direct appeal given our Supreme Court's granting of review of *State v. Frawley*, 140 Wn. App. 713, 167 P.3d 593 (2007). In the meantime, Fort's personal restraint petition remained stayed.

March 24, 2014    This court expanded the stay of Dallin Fort's personal restraint petition to await, in addition to *Frawley*, our Supreme Court's disposition and mandate in *In re Personal Restraint of Speight* and *In re Personal Restraint of Coggin.*

September 25, 2014 The state Supreme Court published its opinion in *Frawley.*

48

November 5, 2014    This court lifted its second stay of Fort's second direct appeal. We also granted the parties an opportunity to file supplemental briefing regarding the applicability of our Supreme Court's opinion in *Frawley*.

December 11, 2014  The Supreme Court published its decision in both *Speight* and *Coggin*.

February 19, 2015    This court lifted its stay of Fort's personal restraint petition and consolidated the petition with Fort's second direct appeal. Dallin Fort and the State both accepted this court's invitation to file supplemental briefing.

April 3, 2015        In his supplement brief, Fort argued for the first time that appellate counsel for his first direct appeal was ineffective for not asserting a public trial right violation.